436 So.2d 1335 (1983)
Roma and Joseph QUARTANA
v.
David JENKS, et al.
No. 82-CA-184.
Court of Appeal of Louisiana, Fifth Circuit.
August 8, 1983.
Rehearing Denied September 16, 1983.
Writ Denied November 18, 1983.
*1336 Hammett, Leake & Hammett, W. Paul Andersson, New Orleans, for plaintiffs-appellees.
John F. Tooley, Jr., Gretna, for defendants, plaintiffs-in-reconvention-appellants.
Before BOUTALL, GAUDIN and GRISBAUM, JJ.
GRISBAUM, Judge.
This case involves a protracted dispute between three shareholders of a small corporation formed to operate a restaurant. It is primarily concerned with allegations that one officer/shareholder breached a fiduciary responsibility toward the corporation and conspired to gain control of the corporation by illegal means. The trial court found the evidence insufficient to support these allegations. We affirm.
In the spring of 1974 three friends, Roma Quartana, Rommayne Jenks, and Pat Farley joined together to form a corporation named Progressive Arts, Inc. As equal shareholders, these three women acquired restaurant equipment and the lease of the restaurant location and executed a loan in which they were co-obligors along with two of their husbands. The promissory note was secured by a collateral chattel mortgage of the restaurant equipment. All three shareholders initially worked in the restaurant in some capacity. Soon after the restaurant opened, there was disagreement among the shareholders as to its management. After July, Mrs. Jenks and Mrs. Farley operated the restaurant together; Mrs. Quartana, however, became inactive as to management but continued to take care of their records.
In October of 1974 the business closed. The restaurant owed money to suppliers and utility companies; rental and note payments were also past due. In order to avoid being sued on the note, Mr. and Mrs. Quartana approached the bank and "acquired" the note from the bank with full rights to all security (the collateral mortgage on restaurant equipment and fixtures and supposedly an assignment of the lease). They then filed suit by executory process against the corporation and the remaining co-debtors. This original petition was styled as a suit on a promissory note.
The defendants, Rommayne Jenks, Pat Farley and her husband, enjoined the judicial sale claiming that the executory process against them was improper since the corporation assets had not been exhausted (they claimed the maker of the note was Progressive Arts, Inc. and all of the individual parties were simply endorsers). The plaintiffs amended their petition to proceed against the corporation and reserved their right to proceed for deficiency judgment against the individual defendants if the proceeds of the judicial sale were insufficient to satisfy their claims. The property was appraised by three appraisers, one of which was chosen by defendants. A sheriff's sale was held, but only the plaintiffs appeared and bid on the chattels. No objections were filed against the judicial sale nor were any writs or appeals taken respecting the propriety of the sale. The sale of the chattels amounted to $2217.37, which was insufficient to satisfy the plaintiffs' claim; therefore, plaintiffs converted the proceeding to via ordinaria and sought a deficiency judgment against the corporation and the remaining shareholders and the husband of one of the shareholders.
Various aspects of the case have been previously presented to the Louisiana Fourth Circuit Court of Appeals and the Louisiana Supreme Court. Pertinent to this appeal, however, is the Fourth Circuit's decision rendered February 14, 1978 (355 So.2d 607) in which a summary judgment *1337 was affirmed in part, reversed in part, and remanded. That Court found, among other things, that plaintiffs' suit was one for contribution rather than a suit on a note. Its decision limited any award to plaintiffs to a contribution by defendants for their proportionate share of the promissory note paid by the plaintiffs and remanded the case to give defendants an opportunity to present evidence on a reconventional demand which claimed fraud and pirating of the business.[1] It is the trial court's determination of the reconventional demand on remand from which defendants appeal.
The trial court on remand found in favor of Roma and Joseph Quartana and against the corporation and David Jenks, Rommayne Jenks, and Pat Farley and dismissed the reconventional demand of these defendants.
While various errors on appeal are cited by defendants, their contentions can be summarized in the following manner: that Mrs. Quartana as a shareholder and officer violated her fiduciary responsibility to the corporation; that the plaintiffs (Mr. and Mrs. Quartana) conspired to gain control of the corporation by illegal means, and, finally, that the trial court failed to require plaintiffs to give "full value" to the assets plaintiffs acquired from the corporation.
Louisiana law imposes on corporate officers and directors a fiduciary duty to the corporation and its shareholders. La. R.S. 12:91; Noe v. Roussel, 310 So.2d 806, 807, 817-818 (La.1975). The evidence supports the trial court's conclusion that Mrs. Quartana as an officer of the corporation did not violate her fiduciary obligation owed to the corporation and its shareholders.
Defendants claim Mrs. Quartana, as president, breached her fiduciary duty by allowing "the corporation to be defaulted", dismissing the individual defendants from the suit in order that their defenses could not be raised, and dealing with the corporate assets in such a way as not to be in the best interest of the corporation and the remaining shareholders. These contentions are without merit. Mrs. Quartana by paying the promissory note owed to the bank, in fact, protected the corporation from the default of this note. Moreover, the individual shareholders were dismissed from the original "suit on the note" upon their own motion. During the period of time when the two majority shareholders were in control of the restaurant, there were many attempts by both sides to buy the other out. We agree with the trial court's conclusion that this business failed because it was not run properly, and we are also unable to lay the blame for the demise of the restaurant at the feet of any of the three women.
As to defendants' argument that Mrs. Quartana dealt with corporate assets for her own benefit and adversely to the corporation, we find that Mrs. Quartana carried her burden of establishing that the acquisition of the corporation's property, by a process of paying the debt, then suing the corporation and its shareholders for reimbursement, and finally acquiring restaurant equipment at a judicial sale of the property, was an arms length transaction and was fair to the corporation. Moreover, three appraisers, one of whom was chosen by the defendants, appraised the restaurant equipment. The equipment and fixtures were sold at public auction after these appraisals. While the auction was open to the public, including the two majority shareholders, only the Quartanas were present for the sale. In his reasons for judgment, the trial judge stated the following:
The fact that Mrs. Quartana was the president and agent for service of process of the corporation formed by the three ladies did not give her an advantage over the other operators of the business because any notices which she received were properly transmitted to defendants by certified mail.
The trial court also found that the Quartanas "lost money along with Mrs. Jenks and Mrs. Farley and perhaps to a greater degree." *1338 After careful review of the record, we agree with the trial court that Mrs. Quartana as president did not personally gain from the corporation. No unfair advantage was taken by Mrs. Quartana as president of the corporation.
Responding to the issue of whether plaintiffs conspired to gain control of the corporation by illegal means, the trial judge stated in his reasons for judgment:
The Court has searched the evidence for some finding of fact which would indicate that the Quartanas were deliberately attempting to deceive and defraud the defendants with the ultimate aim of profiting thereby. Such proof is not evident and the Court has come to the conclusion that this was a business misadventure from the beginning and all the parties must share in the payment of the note by Mr. Quartana.
We, too, find in the record no evidence that fraud or illegal means were used to gain control of the corporation.
Finally, defendants contend that the real value of the assets which plaintiffs acquired at the public auction was the value of the assets when the corporation began, namely, $26,000 instead of the amount given for the equipment at the judicial sale ($2217.37). Arguably, the restaurant equipment may have been worth more; defendants' appraiser testified at trial that had he known the equipment was not to be moved he would have given a higher value to certain items. Other testimony as to the assets' worth was sketchy. On the other hand, Mrs. Quartana has shown that the transaction by which she and her husband acquired corporate assets was fair. Moreover, the propriety of the judicial sale was not attacked within the appropriate delay period. We cannot agree with defendants that this court should somehow now adjust the value of the equipment to $26,000 and give credit for that amount towards the indebtedness owed by defendants.
Since we do not find that Mrs. Quartana breached her fiduciary duty to the corporation and its shareholders nor do we find that fraud or illegal means were used to take over the corporation, plaintiffs are entitled to judgment in this matter. We note the Fourth Circuit previously held in its 1978 judgment in this proceeding that the appropriate credits against the adjusted purchase price of the note ($16,465.33) are the proceeds of the judicial sale ($2217.37) and the value of the lease (On remand the lease was found to have no value since it was unassignable).[2] The trial judge rendered judgment in accordance with that opinion. We, therefore, affirm the trial court's judgment. Appellants-defendants are cast for all costs of this appeal.
AFFIRMED.
NOTES
[1] It also remanded the case for a determination of the value of the lease that the Bank supposedly reassigned to the Quartanas. However, on remand it was shown that, in fact, the lease by its own terms was unassignable and, therefore, no credit could be given for it.
[2] "On a new trial, if plaintiffs are found to be entitled to a judgment, then the judgment should be for 4/6 of the purchase price of the note ($24,698 × 4/6 = $16,465.33), less a credit of $2,217.37 for the proceeds of the judicial sale and an appropriate credit for the value of the lease, with legal interest from April 10, 1975, the date of the judicial demand, until paid and for all costs. Each of the four co-debtors is only liable for his virile share. Since the note was discharged, the 9½% interest from the date of payment and 20% attorney's fees provided therein are eliminated." Quartana v. Jenks, 355 So.2d 607, 611 (La.App. 4th Cir. 1978).