477 So.2d 783 (1985)
NORMAT INDUSTRIES, INC., et al
v.
Matthew R. CARTER.
No. 85-CA-118.
Court of Appeal of Louisiana, Fifth Circuit.
October 10, 1985.
Norman W. Reisig, Jr., Anthony W. Wambsgans, Cronvich, Wambsgans & Michalczyk, Metairie, for plaintiffs-appellants.
Matthew R. Carter, Harahan, in pro. per.
Before BOUTALL, KLIEBERT and CURRAULT, JJ.
KLIEBERT, Judge.
Plaintiff, Norman Reisig, individually and as a stockholder and director of Normat Industries, Inc., on its behalf, sued Matthew R. Carter, the president, director and stockholder of Normat Industries, Inc., defendant, for an accounting and money judgment based on an alleged breach of his fiduciary responsibility to the corporation. The trial court found Carter had expended $25,398.34 of corporate funds for other than the business of the corporation and accordingly rendered judgment in favor of the corporation and against Carter in that amount, but refused to find Carter had breached his fiduciary responsibility to Normat. The plaintiff appealed, assigning as error the trial court's refusal (1) to require Carter to account for corporate funds *784 under his control, (2) to hold Carter breached his fiduciary responsibility and (3) to cast Carter in judgment for all unaccounted for funds of the corporation as well as damages flowing from the breach of his fiduciary responsibility. We amend the judgment and remand for further proceedings.
Reisig and Carter were personal friends and in the spring of 1981 decided to construct for sale on a speculative basis a four unit condominium. By pooling and combining their respective talents, Carter, as a builder and Reisig, as a lawyer, hoped to minimize the cost of construction and sale and produce a profit on the project. Accordingly, Reisig rendered the necessary legal and notarial services to set up a corporation named "Normat Industries, Inc." with the stock ownership being equally divided between Reisig and Carter. Normat reimbursed Reisig for his out of pocket expenses. Carter was named president of the corporation and Reisig's wife, Rosita, was named secretary.
At the time of incorporating Normat, Reisig had an option to acquire a lot of ground in Orleans Parish which he and Carter agreed would be used for the condominium project. Reisig pledged his personal certificate of deposit with the Jefferson Bank & Trust (JBT) to obtain a loan for the $30,000.00 purchase price of the lot. He advanced the sum to Normat and rendered the necessary legal and notarial services to have the title to the lot transferred directly from the developer to Normat.
Thereafter, based on an estimated construction cost of $134,000.00, supplied by Carter, Normat obtained a line of credit in the amount of $163,500.00 from JBT to finance the project. To secure the loan a mortgage note in the amount of $200,000.00, secured by collateral mortgage on Normat's lot, was pledged as security for a hand note of Normat's in the amount of $163,500.00, which was also personally endorsed by Reisig and Carter. Reisig performed the legal (including title certification) and notarial work needed in connection with the loan.
A checking account in the name of Normat was opened with JBT. Carter, as president, and Mrs. Reisig, as secretary, were authorized to draw checks on the account; however, only Carter actually drew checks on the account. The bank mailed the bank statements to the corporation's business office which had been listed as Reisig's law office.
Out of the initial proceeds advanced on the loan, Normat reimbursed Reisig the $30,000.00 he had advanced Normat to purchase the lot. Thereafter, Carter obtained plans and permits and commenced the construction of the condominium units under an estimated six months completion date. Other than the initial organizational minutes and those required for the financing, the corporation had no minutes of meetings of its incorporators, stockholders or directors.
About one year after the construction commenced, Carter informed Reisig and a loan officer of JBT that an additional $20,000.00 would be needed to complete the project as planned. The bank agreed to and did increase the loan to $200,000.00 upon Reisig pledging a personal certificate of deposit as collateral for the loan.
In the following months, according to Reisig, he became impatient with Carter's performance and became suspicious of his statements and actions and decided to investigate. Although the full $200,000.00 loan had been utilized, on an inspection by Reisig and the bank's loan officer, it was learned that the building was only 60% to 65% completed and there was some $25,000.00 of construction bills outstanding. Without the cooperation or assistance of Carter who refused to help, at the bank's request, Reisig pledged additional personal securities with the bank and had another builder complete the project at a cost of $60,000.00. Ultimately, JBT foreclosed on the condominium project which brought in $130,000.00 at the foreclosure sale.
When Carter refused to assist and cooperate in obtaining additional financing, in completing the building, and in the selling and/or renting of the units, Reisig demanded *785 an accounting from Carter of the corporate funds ($200,000.00 loan proceeds). In response, Carter produced only rough figures indicating the cost of completing the building would be about $225,000.00 but refused to furnish an accounting of the $200,000.00 in loan proceeds previously expended by him. He contended he could not render an accounting because the bank statements, cancelled checks and supporting invoices were in Reisig's possession because he had maintained them in an empty file cabinet drawer in Reisig's office.
When the parties were unable to resolve their differences this lawsuit was filed. Although the transcripts containing several volumes were not indexed, were improperly and poorly assembled, we do find the record is replete with pleadings and hearings relative to the plaintiff's efforts to unsuccessfully attach properties of the defendant to prevent its disposition to the detriment of the plaintiffs.
At the trial, Reisig produced copies of cancelled checks, invoices, and testimony of subcontractors, indicating checks had been drawn by Carter on the corporate bank account for payment of items other than those involved in the construction of the condominium project, including builder's fees for Carter and payment of his personal expenses. Carter sought to defend his expenditures and actions by claiming approval or authority for them under verbal agreements between himself and Reisig. Reisig contended the agreement between him and Carter was for each of them to do the work on behalf of Normat in their field of expertise free of cost and then divide the profits. Carter, however, contended that he was entitled to payment of his travel, entertainment and car expenses plus a builder's fee and a draw of $30,000.00. He claimed entitlement to the $30,000.00 draw because Reisig was initially required to put up the lot as his contribution; however, when he elected to get payment from Normat for the lot, then Carter contends the agreement was changed giving him an entitlement to a $30,000.00 draw in order to equalize him with Reisig. Further, as the president and only person who sought and obtained advances on the loan and the only one who wrote out checks on the corporate checking account, Carter has the burden of showing how the funds of the corporation which were under his direct custody and control were expended. His testimony that the cancelled checks and invoices were left in Reisig's office does not meet that burden. At least four persons testified that Carter did not retain these records in Reisig's office.
Notwithstanding the different versions of the agreement, the trial judge found the following expenditures by Carter were not in fact related to the construction of the condominium and should be reimbursed by Carter to Normat, to-wit: (1) $8,000.00 builder's fee paid to Carter, (2) gasoline and other personal expenses of Carter $6,783.42, (3) check in payment of building materials delivered to Carter job sites other than the condominium $8,317.54, (4) for checks totalling $1,475.00 payable to Harold Melan and endorsed by Carter which Melan denied receiving, and (5) for checks totalling $822.38 for unaccounted for paint and wallpaper, a painting, repairs on Carter's personal air conditioner and for rental of Carter's personal mail box. After a careful review of the record we cannot say the trial judge erred in making these factual conclusions and in finding the delays in construction which resulted in increased interest costs and ultimate foreclosure by the lender were not caused by Carter's actions. Having done so, however, we believe he erred in refusing to hold Carter had violated his fiduciary responsibility to the corporation.
Louisiana Law imposes on corporate officers and directors a fiduciary duty to the corporation and its shareholders. R.S. 12:91; Noe v. Roussel, 310 So.2d 806 (La. 1975); Quartana v. Jenks, 436 So.2d 1335 (5th Cir.1983). This duty requires the fiduciary to handle the affairs of the corporation *786 in good faith and with the same diligence, care, judgment and skill as would be utilized in handling his own affairs. R.S. 12:91. The fiduciary cannot take advantage of his position for his personal benefit to the detriment of the corporation or its other stockholders. Noe v. Roussel, supra. Further, the person acting in the fiduciary capacity bears the burden of establishing that his transactions were legitimate. Noe v. Roussel, supra.
Here, even if Carter's version of the agreement was (contrary to the findings of the trial court and of this court) accepted, Carter clearly violated his fiduciary duties in using corporate funds to pay the items shown as numbers (3), (4), and (5) in the preceding paragraph.
Accordingly, we amend the judgment of the trial court to provide that Carter violated his fiduciary duty to the corporation and therefore is required to render an accounting for the $200,000.00 of corporate funds which were in his direct custody and expended by checks written on the corporate checking account by him and, as amended, we affirm the trial court's judgment insofar as it held Carter was not liable for the increased interest cost and/or attorney fees and penalties arising from the delays in construction of the project or payment of the loan and in casting Carter in judgment for the $25,398.34 of corporate funds expended for his personal benefit. Further, we remand the case to the trial court with instructions to proceed with an evidentiary hearing in which Carter is required to account for the remaining $174,601.66 of corporate funds expended by him and in the event he is unable to show that the same was expended for the benefit of the corporation judgment be rendered in favor of the corporation and against Carter for such amount.
All costs of this appeal to be borne by defendant Carter.
AMENDED AND, AS AMENDED, AFFIRMED AND REMANDED.