568 So.2d 133 (1990)
Joyce Ludwig, Wife of Vance SPRUIELL, Catherine M. Ellis, Sidney Ellis Reavey, and John M. Ellis, Jr.
v.
Clare Leary, Wife of/and Edward B. LUDWIG, Jr., Edward B. Ludwig, III, Lureco Realty Co., Inc., Drawde-Allen, Inc., and Container Realty & Construction, Inc.
Joyce Ludwig, Wife of Vance SPRUIELL, Catherine M. Ellis, Sidney Ellis Reavey, and John M. Ellis, Jr.
v.
E.B. LUDWIG, INC., E.B. Ludwig, Jr., and Clare Leary Ludwig.
Joyce Ludwig, Wife of Vance SPRUIELL, Catherine M. Ellis, Sidney Ellis Reavey and John M. Ellis, Jr.
v.
Edward B. LUDWIG, III, Drawde-Allen, Inc. and Container Realty & Construction, Inc.
Joyce Ludwig, Wife of Vance SPRUIELL, Catherine M. Ellis, Sidney Ellis Reavey, and John M. Ellis, Jr.
v.
TRIPEN, INC., E.B. Ludwig, Inc., Container Realty & Construction, Inc., Lureco Realty, Inc., Clare Ludwig, Wife of/and Edward B. Ludwig, Jr., Nella Scheyer, Widow of Edward B. Ludwig and Edward B. Ludwig, III.
Nella S. LUDWIG
v.
Joyce Ludwig SPRUIELL, Catherine M. Ellis, Sidney Ellis Reavey, and John M. Ellis, Jr.
Nos. 90-CA-192 to 90-CA-196.
Court of Appeal of Louisiana, Fifth Circuit.
September 13, 1990.
Writ Denied January 18, 1991.
*136 Mack E. Barham, Robert E. Arceneaux, Gail N. Wise, Barham & Associates, New Orleans, for plaintiffs/appellants.
Nathan Greenberg, David Pick, Greenberg & Dallam, Gretna, for plaintiffs/appellants.
Donald A. Hammett, John V. Baus, Jr., Blue, Williams & Buckley, Metairie, for defendants/ appellees.
Bernhardt C. Heebe, New Orleans, for defendants/ appellees.
Before GRISBAUM and GOTHARD, JJ., and KOLLIN, J. Pro Tem.
GOTHARD, Judge.
This appeal concerns four shareholder derivative actions and a reconventional demand for revocation of inter vivos donations which were consolidated for trial. We affirm in part and reverse in part.
The roots of these cases began in the 1950's and 1960's when Edward B. Ludwig, Sr. began several family corporations to conduct the family business centered around steel, construction and real estate. In 1967 Mr. Ludwig became ill and began relying on his son Edward B. Ludwig, Jr. (Buddy) to manage the family businesses. Buddy put together a project whereby Mr. Ludwig, Sr. invested $43,000 to buy land on which three industrial buildings were constructed for lease to a third party. A new corporation, Drawde-Allen, was formed to own and manage these buildings and any future industrial real estate the family might acquire. The sole shareholders were Edward B. Ludwig, Sr. and his wife Nella. Edward B. Ludwig, Sr. died in 1968. The buildings were constructed by Buddy's Construction Corporation.
Because the corporation had no money and had incurred a debt for construction of the three buildings, the personal guarantees of Nella and Buddy were required by the bank in order for Drawde-Allen to secure the loan to pay construction costs. Buddy gave his personal guarantee even though he was not a shareholder of Drawde-Allen at the time.
During the period from 1968 to 1983 the family corporations acquired further real estate holdings and the various corporations were managed on a day to day basis by Buddy. His sister, Joyce Ludwig Spruiell, served as a director in several of the corporations. No formal corporate meetings were held. Whether or not corporate business was conducted at family gatherings is in dispute. At any rate, the corporate proceedings are chronicled in written minutes and resolutions signed by Joyce and the various family members, who were directors in the corporations.
In 1976 Nella Ludwig began making inter vivos donations of stock to her children, Buddy and Joyce, and her grandchildren. These donations were made as an estate planning device.
In 1983 Joyce and her children, now adults, received notice that two of the family corporations, Container Realty & Construction, Inc. and Drawde-Allen, Inc. were merging. Because they did not fully understand the ramifications or meaning of the merger, Joyce and her children (Catherine, Sidney and John), contacted Joyce's attorney and requested that he investigate the merger and their interests in the family businesses.
Pursuant to the attorney's request for more information a meeting was held for the purpose of an examination of corporate books and records concerning the merger. The meeting deteriorated into a family feud pitting Joyce and her children against Nella, Buddy and Buddy's family.
Subsequently, Joyce and her children filed four separate shareholder derivative actions against Nella, Buddy and his family and against five family corporations, Iona Realty, Inc., Container Realty and Construction, Inc., Drawde-Allen, Inc., Lureco, Inc. and E.B. Ludwig, Inc. Also named as a defendant was Tripen, Inc., Buddy's family corporation. The petitions in all four suits are similar and assert that plaintiffs were damaged as a result of eleven transfers of immovable property to the detriment of the family corporations. The suits seek return of the immovable property to the corporations and an accounting of rentals or, in the alternative, damages.
*137 As a result, Nella filed suit against Joyce and her children for revocation of donations for ingratitude based on the allegations in Joyce's petition. Nella and Buddy also filed suit for partition of property owned in indivision with Joyce. The partition action was settled and is not before us on appeal.
In a reconventional demand Joyce asserts that defendants' actions constitute a pattern and practice of minority oppression in violation of 18 U.S.C. § 1961 et seq. (RICO). That demand was dismissed on an exception of no cause of action for failure to allege the predicate criminal acts.
The four derivative actions and the revocation action were consolidated for trial. Also taken up at that time was defendant's exception of prescription. After a trial on the merits, the trial court rendered judgment in favor of defendants in the derivative actions, finding actions prescribed on three of the transfers and that the remaining sales were proper and not in violation of plaintiffs' derivative rights. Additionally, the court ruled in favor of plaintiff in the revocation action finding that Joyce and her children acted in a manner that was "so cold and vituperative as to justify the revocation action."
Plaintiffs appeal the outcome of the derivative actions and the revocation action and assign three errors:
1. The trial court erred in holding that grounds for revocation of the inter vivos donations were alleged and proved.
2. The trial court erred in refusing to find numerous breaches of fiduciary duties, any one of which justifies the relief sought by the corporations through Joyce and the grandchildren.
3. The trial court erred in holding that appellants' claim with respect to three of the properties had prescribed.

REVOCATION OF INTER VIVOS DONATION.
Nella Ludwig filed a suit for revocation of various inter vivos donations made to her daughter, Joyce, and Joyce's children, Sidney, Catherine and John, on the ground of ingratitude. These donations were irrevocable donations of stock in various family corporations evidenced by separate, formal acts executed between 1976 and 1983.
Article 1559 of the Civil Code provides that an inter vivos donation may be revoked for ingratitude of the donee. Article 1560 explains that revocation can take place on account of ingratitude if the donee "has been guilty towards him (donor) of cruel treatment, crimes or grievous injuries." The trial court revoked the donations finding that, the "depth of ingratitude and perniciousness was demonstrated in the pleadings filed on behalf of the plaintiffs accusing defendant mother, Nella, and E.B. Ludwig, Jr., the defendant's son, of racketeering activities in violation of the Federal statutes."
At trial Nella testified that she was hurt and embarrassed by the selfishness and ingratitude of her daughter and grandchildren. Nella also testified that Joyce referred to her as a "crooked thief." Joyce and her children maintain that their action in bringing the shareholder derivative actions and making the reconventional demand to the revocation suit were solely to protect their rights and not intended as a personal attack on Nella.
Nella was sued in her capacity as director or shareholder in various corporations formed pursuant to R.S. 12:1 et seq. Despite Nella's testimony that the corporations involved were family matters and should not be aired in public, the law does not make that distinction between family and business corporations.
Pursuant to R.S. 12:1 et seq. a minority shareholder has a right to bring a derivative action on behalf of the corporation. The minority shareholders in a derivative action are only nominal plaintiffs whose right to recover can only be asserted secondarily. C.C.P. art. 596; Robinson v. Snell's Limbs and Braces, 538 So.2d 1045 (La.App. 3rd Cir.1989). We do not find that allegations of breach of fiduciary duty contained in the shareholder derivative pleadings asserting the corporations' right to recovery are sufficient to constitute *138 grievous injury under the Civil Code. But the allegations go beyond the norm in shareholder's derivative actions. Joyce and her children made the direct allegation that Nella was guilty of wrongdoing to the extent that she incurred liability under the federal Racketeer Influenced and Corrupt Organizations Act (RICO) embodied in 18 U.S.C.1961 et seq. The trial court relied heavily on these allegations of wrongdoing in the reconventional demand to the revocation suit in revoking the donations. The thrust of the allegation in the reconventional demand is that Nella, by filing the revocation action, formed a "deliberate attempt or scheme to appropriate unto the said defendant in reconvention your reconvenor's interest as minority stockholders in each.... corporation."
Grievous injuries are defined as follows:
"Injuries include any act naturally offensive to the donor. It may be the adultery of one of the spouses.... The act may consist of slanderous charges; of a seizure levied by the donee against the donor of whom he is creditor; or, in a proper case, even of the refusal to consent to the revocation."
4 C. Aubry & C. Rau, COURS DE DROIT CIVIL FRANCASS § 708 (La.State Law Institute Trans. Vol. 3, 1965); Perry v. Perry, 507 So.2d 881 (La.App. 4 Cir.1987) writ den. 512 So.2d 465 (1987).
The evidence adduced in the instant case reveals that Joyce and her children sought to obtain more of the family property for themselves. In order to do this they initiated a shareholder's derivative action through attorneys hired to represent their interests. As part of their representation of their clients, and with the clients' understanding and acquiescence these attorneys filed a reconventional demand in response to Nella's suit for revocation. That demand implied unfounded claims of criminal activity. The demand, dismissed for failure to state a cause of action under 18 U.S.C.1961, was unnecessary to protect shareholder's rights as asserted by Joyce, et al in testimony given at trial.
The trial court heard the testimony in its entirety and has a first hand impression of the credibility of all the witnesses. It is apparent from the wording of the judgment that the trial court was deeply moved by the sincerity of Nella's testimony and conversely by the insincerity of Joyce's. Reasonable evaluations of credibility may not be disturbed on appeal absent a showing of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The trial court found grievous injury sufficient to revoke the donations existed in the lack of concern and in the overt attempts to discredit Nella committed by Joyce and her family, acts so naturally offensive to the donor that they constitute grievous injury. We find no manifest error in that conclusion and uphold the trial court's action in that matter.

PRESCRIPTION
The trial court found actions on three of the properties, Evans Road and two on Cinder Road, to be prescribed.
Actions based on breaches of fiduciary duties constitute personal actions subject to a liberative prescription period of ten years. LSA-C.C. art. 3499; Levy v. Billeaud, 443 So.2d 539 (La.1983); Plaquemines Par. Com'n Council v. Delta Dev., 502 So.2d 1034 (La.1987). A judicially created exception to the running of liberative prescription is afforded by the doctrine of contra non valentem agere nulla currit praescriptio, (prescription does not run against one who is unable to act). The four recognized situations where the doctrine applies to prevent the running of prescription are:
(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
(2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action;

*139 (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
Plaquemines Parish Com'n Council v. Delta Dev. Co., supra; Whitnell v. Menville, 540 So.2d 304 (La.1989).
We now review transactions individually in view of the aforementioned principles.

Evans Road
E.B. Ludwig, Inc. acquired the property on Evans Road from D.H. Holmes Company on December 15, 1971, for $190,000 with the intent to develop the land for commercial leasing. E.B. Ludwig, Inc. contracted with E.B. Ludwig Construction, a corporation owned by Buddy, for construction of a warehouse on the property at a cost of $66,000. The building was leased at an approximate annual rental fee of $20,000. A plan to develop the property further was thwarted when the Whitney Bank refused to lend the corporation the additional funds needed for the development unless Buddy signed personally on the note.
Buddy's refusal to be personally liable with the corporation for a $400,000 collateral mortgage note on corporate property left the corporation with a $66,000 debt for the building, land which could not be developed for lack of financing, and little cash in the bank. It had the assets of the land and the lease in its favor.
On October 11, 1972 E.B. Ludwig, Inc. sold the Evans Road property to Buddy pursuant to a corporate resolution adopted on September 26, 1972 and signed by Nella Ludwig as vice president of the corporation. The sale was made in consideration of $190,000 payable by a promissory note bearing 6% per annum interest payable monthly. Plaintiffs make no claim that any amount of principal or interest currently remains unpaid. It appears from the record that the $66,000 debt for the building was forgiven and with the land purchase Buddy also took over ownership of the building, leaving the corporation with $190,000 and no debt.
Buddy subsequently borrowed $400,000 and completed the planned development of the property. Plaintiffs seem to suggest that Buddy's refusal to personally endorse the loan to the corporation while he agreed to co-sign loans for other family projects constitutes some breach of duty. We know of no duty owed to a corporation which would require a director to incur personal liability for corporate debts under these circumstances. Freedom from personal liability is one of the primary reasons for formation of the separate corporate entity.
Two appraisals of the property were given at trial. Plaintiffs' appraiser, Irvington Eppling, appraised the property at $345,000 for fair market value of the "lease fee interest" of the Evans Road property. The appraisal valued the land and the building at the time of sale at $190,000 and $114,400 respectively. The appraisal also took into consideration the value of the lease, but not the debt for the construction of the building. Mr. Eppling also noted that the terms of the sale were very favorable to the buyer since no down payment was required. Further, no mortgage or lien was recorded on the property in favor of the corporation.
Defendant's appraiser, Robert Merrick, valued the land at $216,000 and the building at $84,000. He stated, however, that a sales price of $190,000 for the land was a reasonable sales price for 1972 and well within the realm of comparables. Mr. Merrick pointed out that the building was constructed partially of rejected materials and carried none of the customary builder's warranties. Consequently, it would be difficult to sell since financing would be difficult to obtain for the buyer.
Both E.B. Ludwig, Jr. and his wife Clare testified that Joyce and her children, who were all minority shareholders of E.B.L. Inc., were told of the Evans Road sale. At trial Joyce denied any knowledge of the sale until confronted with statements she made previously in deposition which indicated that she was informed of the sale while she was in London by her attorney, Charles Rosen. She then admitted receiving *140 a check from the corporation as a result of the transaction and a letter from Mr. Rosen informing her that money from a transaction was deposited in her New Orleans bank account. However, she denied knowing which transaction had transpired and stated that she did not question the matter since she trusted her brother to handle the corporate, as well as some of her personal, affairs while she was living in London.
Since the transaction occurred in 1972 and suit was filed on June 28, 1985 the matter is clearly prescribed on its face. Appellants argue that the third category of the doctrine of contra non valentem, where the debtor himself has done some act effectively to prevent the creditor from availing himself of his cause of action, is applicable to prevent the running of prescription. Appellants point out that Joyce was living in London at that time and claims to be uninformed of the sale.
Under the circumstances we find no error in the trial court's decision with regard to this property. Joyce received cash from the sale and her attorney was given some indication of the transaction which he conveyed to Joyce. Even assuming, arguendo, that Joyce was unaware that Evans Road was sold at that time, there is testimony by the defendants that Joyce and her children were subsequently present at several family functions at which the sale, as well as other family business was discussed. Although plaintiffs deny that fact, the matter is one of credibility to be decided by the trial court. There is no indication of any act by Buddy which prevented Joyce from knowing of the transaction.

Lafreniere Plantation
The trial court also sustained an exception of prescription to the action concerning a sale from Lureco, Inc. to Tripen, Inc. of 1.435 acres in the Lafreniere Plantation on July 5, 1973 for $103,511.47. This property is referred to as "Plant # 3, Cinder Road" by the defendants and refers to a portion of an undeveloped area on a private shell road.
The sale was authorized by Nella who was president of Lureco. The transfer of property was financed by a promissory note with no down payment. The note, bearing interest at the rate of 6% per annum, was payable in monthly installments of $1,000 each.
According to the record the only plaintiff to own stock in Lureco, the seller corporation, was Joyce Spruiell.[1] She was made both a director and vice-president of the corporation by resolutions dated August 12, 1968.
Testimony given regarding this property is consistent as to both parties with testimony given regarding other transactions. Buddy testified that business was discussed often and openly at family meetings and that Joyce was fully informed of the transactions. Joyce testified that she knew nothing of the sale and reiterated her claim that she did not read the corporate resolutions presented for her signature because she trusted her brother to handle the corporate dealings fairly. That testimony belies her statement that relations with Buddy were strained since her return from London in July of 1973. Joyce testified she discovered on her return from her year abroad that Buddy had failed to handle certain personal matters as Joyce had requested.
In view of that testimony and the circumstances surrounding the transaction we do not find error in the trial court's grant of the exception of prescription. We believe the cause of action was reasonably knowable by the plaintiff and that the defendants did no act to effectually prevent the plaintiff from suing.

Time Saver Office
Also on Cinder Road is a smaller tract of land which was sold on January 22, 1975 by Container Realty, Inc. to Tripen, Inc. for $66,340. At the time of the sale Joyce was a director and vice-president of the seller corporation. The remaining *141 plaintiffs were minority shareholders. We believe this action is prescribed for the reasons set out in the previous two property discussions.

BREACH OF FIDUCIARY DUTY
Corporate officers and directors owe a fiduciary duty to the corporation and its shareholders. LSA-R.S. 12:91; Noe v. Roussel, 310 So.2d 806 (La.1975); Quartana v. Jenks, 436 So.2d 1335 (La. App. 5th Cir.1983). That fiduciary duty requires that:
"officers and directors.... shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions." R.S. 12:91.
A transaction between a corporation and one of its directors is not voidable simply because of the relationship of the parties to the transaction. LSA-R.S. 12:84 A sets guidelines for validating such a transaction.[2]
The transaction must be a good faith transaction, negotiated and confected at arms length. House of Campbell, Inc. v. Campbell, 172 So.2d 727 (La.App. 4th Cir.1965); Noe v. Roussel, supra. The fiduciary cannot take advantage of his position for his personal benefit to the detriment of the corporation or its shareholders. Noe v. Roussel, supra; Normat Industries, Inc. v. Carter, 477 So.2d 783 (La. App. 5th Cir.1985). The fiduciary bears the burden of proving his good faith in entering into the transaction as well as the inherent fairness to the corporation. Rivercity v. American Can Co., 600 F.Supp. 908 (E.D.La.1984); affm'd 753 F.2d 1300 (5th Cir.1985); Woodstock Ent. v. Intern. Moorings, Etc., 524 So.2d 1313 (La.App. 3rd Cir.1988).

Cinder Road
Four properties on Cinder Road, Parcels 1 & 2, 1A, IB, 1C, are made subjects of this litigation. The trial court reviewed all four transactions and ruled against the plaintiffs in each, finding the sales to be fair to the corporation and/or authorized by the Board of Directors after full disclosure.
Parcels 1 & 2 were sold on December 22, 1976 by Lureco, Inc. to Clare and Buddy Ludwig, Jr. for $27,860. Terms of the sale provided for a $100 cash down payment and a note for the balance bearing 6% interest per annum payable in annual installments of $3,000 on principal plus accrued interest. As in the previous Lureco sale, Joyce was a director and vice-president of the corporation and the only plaintiff who had an interest in the seller corporation. Title on the property was passed to Buddy's son, E.B. Ludwig, III on the next day. The property had a metal building on it which was constructed in the early 1960's. At the time of the sale it was rented to Garage Scrap Paper Trash Collector. Shortly afterward the tenant moved out and the building, in a state of disrepair, was left vacant. In 1980 the building was destroyed by fire.
*142 The property was appraised by Mr. Eppling at $83,750 and by Mr. Merrick at $35,000. From testimony given it appears the building was in deplorable condition and unrentable. The property is on a dirt road and is currently undeveloped. Under these circumstances we see no manifest error in the trial court's decision to uphold this transaction.

Parcel 1A1B-C
These parcels were originally purchased by Tripen, Inc. from the I.C. Railroad on December 6, 1974 for $284,026. The purchase was financed by a loan of $100,000 from Container and a $60,000 loan from Lureco. The balance was paid in cash from Tripen. The loans were made at 6% interest and title was transferred by Tripen to the financing corporations.
On May 31, 1977 Lureco sold parcel 1-C to Buddy's son, Trip Ludwig, for $27,000. There was no down payment. A promissory note bearing an interest rate of 6% per annum had a five year term and was unsecured. The sale price is in line with appraisals given at trial of $20,000 and $28,000.
Parcel 1-A was sold on June 30, 1977 by Container Realty back to Tripen for $185,672 in cash. It appears from the record that this was not a sale, but rather a recording of the loan extended to Tripen by Container. Again the price is fair according to the appraisals of $130,000 and $225,000.
Parcel 1-B was sold by E.B. Ludwig, Inc. to Tripen for $88,500. The terms of the sale were $50,000 cash down payment and a note for the balance bearing 7% interest. The appraisals at trial were $80,000 and $106,000.
Buddy testified at trial that these purchases were part of a family plan to divide the family holdings between operating companies and holding companies. The real estate companies, such as Lureco, Container and Iona received services from Tripen and the steel and construction corporations in that buildings were constructed at cost and no fees were charged for maintaining or finding tenants.
It is clear from the record that Joyce as director of various corporations gave her approval of the transactions. We believe the transactions were conducted in good faith and fairness and benefitted all the corporations involved. Consequently we find no error in the trial court's decisions in these matters.

Jarvis Street
On April 3, 1968 Edward Ludwig, Sr. and his wife, Nella, as the sole shareholders and directors of Drawde-Allen, executed a document which purported to be an option to purchase immovable property. It provides as follows:
Pursuant to call, a Special Meeting of the Board of Directors of Drawde-Allen, Inc. was held on April 3, 1968 at 901 Jefferson Highway, New Orleans, Louisiana, 70121. The following were present:
Edward B. Ludwig
Nella S. Ludwig
constituting a majority of Directors of this Corporation. Upon motion duly made and seconded it was:
RESOLVED: That Edward B. Ludwig, Jr. or his assignee will have the option to purchase any or all commercial and industrial buildings and land owned by the corporation at a value to be determined by the Board at time of purchase. The purchase price will not be less than the original cost or more than double the book value at the time of purchase.
This offering is made to Mr. Ludwig, Jr. as he is responsible for the procurement of land, buildings, and suitable tenant for the Corporation's development on "L" Street in Camp Plauche.
Upon motion duly made, seconded and carried, the meeting was adjourned.
The option was exercised by Buddy's son, Trip, as assignee to purchase two tracts of land owned by Drawde-Allen on Jarvis Street. On June 21, 1982 Trip purchased Lot NB-B for $172,000 in cash and on August 16, 1983 Trip purchased Lot NB-A for $342,000. The sales totaled $514,000. Appraisals on the property by experts at trial ranged from $925,000 to *143 $1,015,000. Drawde-Allen was merged into Container Realty subsequent to these sales of its only two assets. Buddy testified that the option was granted in acknowledgement that it was only through his efforts that the land was acquired and developed. As previously discussed Buddy's father, E.B. Ludwig, Sr. was ill and unable to handle all of the family business in 1968. Buddy arranged for the purchase, financing and development of property on Jarvis Street (formally known as "L" Street at Camp Plauche). The property was to provide an income for the senior Ludwigs in their old age. It is clear from the option and from Nella's testimony that the intent was for Buddy to be allowed to purchase the property after the income it produced was no longer needed by Mr. and Mrs. Ludwig, Sr.
Buddy further testified that he sought to exercise his option to purchase the property in 1976 but was pursuaded to delay his purchase until after Nella made donations of stock in Drawde-Allen to family members. Thus all of the family members, including the plaintiffs, could share in the proceeds of Drawde-Allen's sale of the property and the amount of gift tax due on the donations of stock would be minimized. That testimony is supported by evidence in the record of subsequent donations of stock.
The trial court upheld the sales on the basis that they were made pursuant to a valid option contract. Plaintiffs argue that the option was invalid.
The validity of the option is moot since the sale has been perfected and title to the property has passed on to the buyer. Once an agreement as to property and price has been made the option becomes a contract of sale. LSA-C.C. art. 2456. Plaintiffs' reliance on C.C. art. 2462 is misplaced. That article delineates the right of the parties to specific performance on an option to sell. The article has no significance after an option has been exercised and a contract of sale is perfected.
The issue in the instant case is not whether the option contract was valid, but sell constituted a good faith act on the part of the Board of Directors of Drawde-Allen. Stated in other terms, did the board believe the option to be valid?
We think it is clear from the testimony and actions of all the parties that reliance on the option was in good faith. We also find that in view of the contributions of Buddy to the formation of Drawde-Allen and the major part he played in ensuring the financial success of the corporation, the sale, albeit for less than the appraised value, was a fair one. For these reasons we find no breach of fiduciary duty and uphold the trial court's decision in this matter.

Knox Road
There were two transactions involving four properties on Knox Road of which the plaintiffs complain. The first sale of property on Knox Road, referred to as parcels number 2 & 3 Knox Road, legally described as Lot B Ludger Fortier Plantation, occurred on June 15, 1977. The seller was Lureco, Inc., the buyer was Nella Ludwig. The terms of the sale required a $1,000 cash down payment with a note of $92,750 for a total sales price of $93,750. The note was payable in annual installments on principal of $1,000 plus 6% interest payable monthly. The sale was authorized by a resolution of the Board of Directors which details the sale and terms. The minutes of the special meeting at which this was resolved are signed by Joyce, Buddy and Nella. The appraised values at trial were $215,000 by Mr. Eppling and $140,000 by Mr. Merrick.
We find R.S. 12:84 applicable to this property. Nella was a director of Lureco at the time she purchased the property. The price agreed upon in consideration of the transfer was somewhat low and the terms of the sale most favorable to the buyer.
Full disclosure of the transaction was given to all the directors, including Joyce. The trial court found that disclosure to be dispositive of the issue on the matter of R.S. 12:84. Further, the trial court found the transaction to be a fair one to the corporation.
*144 Plaintiffs argue that 12:84 must be read together with 12:91 to require that a transaction between an interested director and a corporation must be fully disclosed to the board, approved in good faith and a fair, arms-length transaction.
We agree with plaintiffs that disclosure followed by acquiescence of the board will not validate an unfair, self-serving transaction. "A purgative disclosure cannot remove the taint of unfairness or self-serving opportunity and thus permit a director, or a group of directors, to advantage themselves at the cost of the corporation upon whose Board of Directors they serve. Rivercity v. American Can Company, supra at 920.
However, plaintiffs' conclusion that all plaintiffs should be compensated for the transaction is unfounded. Plaintiffs' reasoning fails to take into account the nature of the shareholder's derivative action. As previously stated the action is on behalf of the corporation, not Joyce and her children.
Because of Joyce's participation in the transaction, it can be argued that she is liable to the real plaintiff, Lureco, for any damages for breach of her fiduciary duties. In her brief Joyce fails to recognize that every director has a fiduciary duty to the corporation, not only those directors with whom she is now in disagreement. That fiduciary duty encompasses this transaction. As explained in Rivercity, supra, at 920:
A fiduciaryduty bound director cannot absolve himself of that duty by admitting his self serving designs. Indeed, such candor, it could be well argued, may well violate the vote of the "remaining" directors since a full disclosure of a disadvantage in corporate disposition may signify a fiduciary violation on their part, since the statute, in any event, requires that the board authorize transaction "in good faith." (citations omitted).
It appears that Joyce had a duty to act in good faith on behalf of the corporation to read and consider the resolutions and minutes presented for her signature. In that sense her knowledge of the transaction is relevant.
One may raise questions about the propriety of a sale such as this, in which the low annual figure paid is far out-weighed by the revenue received from rentals on the property. However, in this case there was testimony that an Internal Revenue Audit of the corporations forced a reduction in Nella's compensation by the various corporations. That action came at a time when Nella needed significant extra funds to pay the gift taxes due on the recent donations made to the family members.
There is also evidence that a plan was divised to sell the corporation's assets to Nella to provide her with sufficient income in lieu of corporation liquidation which had been previously considered. In keeping with the plan Lureco was subsequently merged into Drawde-Allen on March 16, 1978. Under the circumstances it appears that all of the shareholders benefitted from the transactions and thus the corporation benefitted.
In view of these factual findings, the trial court held that there was no breach of fiduciary duty and that the transaction was a fair one. We find no manifest error in that decision.
The second sale, parcels number 4 & 5 Knox Road, more accurately described as Lot C, Ludger Fortier Plantation, occurred on December 22, 1976. The transaction was a sale from Iona Realty Company, Inc. to Clare and Edward B. Ludwig, Jr. in consideration of $34,100. The terms of the sale were $100 down payment with a promissory note bearing an interest rate of 6% per annum given for the balance. The note was to be paid in annual installments of $3,000 plus accrued interest. A lease of an industrial building on the property provided $17,508 rent per year. Mr. Eppling's appraisal of this property and improvements was $132,000. Mr. Merrick's was $100,000. Both appraisals are considerably higher than the $34,100 purchase price.
At trial Buddy testified that the building was in disrepair and in need of extensive renovations. He further stated that he considered the condition of the buildings when he placed a value on the property. *145 No formal appraisal was made at the time of the sale. The purchase price was set by Buddy according to the value of the building. Although Buddy testified to the substandard conditions of the building at the time of the sale, he admits that no renovations have been made on the buildings since the sale in 1976 and that he subsequently sold the property to his daughter for the acquisition price.
Buddy testified that he informed Joyce and the other members of the family of the transaction in 1976 when it occurred. All of the plaintiffs deny having any knowledge of the sale until the records of the family corporations were investigated prior to the filing of this lawsuit.
The record reveals that Joyce was a director and vice-president of Iona Realty at the time of the original transaction. The act of sale is authorized by Nella as president. The record contains the minutes of a special meeting of the Board of Directors of Iona dated November 29, 1979. It indicates that Buddy informed the board that his daughter Penny Ludwig would pay the balance of Buddy's note to the corporation in the amount of $23,500 plus interest. The minutes are signed by Joyce, Buddy and Nella. Buddy contends that this was done when his daughter took over ownership of the Knox Road properties[3] and that Joyce was fully informed of this transaction as well as the previous one in which he purchased Knox Road from Iona. There is no indication in the minutes of what debt the note is in payment and Joyce denies any recollection of its signing, stating repeatedly that she simply signed all the papers Buddy brought to her without question.
The trial court found no breach of fiduciary duty on the part of the directors and further found the transaction to be a fair one to the corporation. We disagree.
We find that LSA-R.S. 12:84 is applicable. Buddy was a director of the seller corporation at the time he purchased the property. The purchase price is clearly unreasonable even by defendant's own appraisal. Further, the terms of the sale are patently unreasonable in that only $3,000 per year was expended for purchase of the property, set off by $17,508 annual revenue received. There is no indication that the board of directors was informed of the material facts of the transaction. No resolution authorizing the sale was presented into evidence. The record contains only the document evidencing the sale, signed by Nella, Buddy and Clare Ludwig, and a minute entry indicating Buddy's daughter, Penny, will pay a debt owed by Buddy to the corporation. The only evidence linking that document to the property is Buddy's testimony. All of these factors considered in their entirety make this transaction markedly different from all the others previously considered. Accordingly, we find that the trial court erred in its decision as it relates to this property. Since the property has been transferred to a third party we find the fairest remedy to be payment of monetary damages. A value can be placed on the property by use of the record, but a value, if any, on Buddy's maintenance of the property is undiscernable from the record. It is also impossible to arrive at an accurate figure for rent proceeds lost by the corporation. For these reasons we remand this matter to the trial court to determine the amount of damages due the corporation.
Accordingly, we reverse the trial court's ruling only as it applies to the sale of parcels number 4 & 5 Knox Road from Iona Realty, Inc. to Edward B. & Clare Ludwig, Jr. We remand this matter solely for a determination of damages due the corporation as a result of that sale. In all other respects the judgment of the trial court is affirmed.
REVERSED IN PART, AFFIRMED IN PART AND REMANDED.
NOTES
[1] The remaining plaintiffs became shareholders in Lureco on December 23, 1976 by donations from Nella.
[2] A. No contract or transaction between a corporation and one or more of its directors or officers, or between a corporation and any other business, nonprofit or foreign corporation, partnership, or other organization in which one or more of its directors or officers are directors or officers or have a financial interest, shall be void or voidable solely for this reason, or solely because the common or interested director or officer was present at or participated in the meeting of the board or committee thereof which authorized the contract or transaction, or solely because his or their votes were counted for such purpose, if:

(1) The material facts as to his interest and as to the contract or transaction were disclosed or known to the board of directors or the committee, and the board or committee in good faith authorized the contract or transaction by a vote sufficient for such purpose without counting the vote of the interested director or directors; or
(2) The material facts as to his interest and as to the contract or transaction were disclosed or known to the shareholders entitled to vote thereon, and the contract or transaction was approved in good faith by vote of the shareholders; or
(3) The contract or transaction was fair as to the corporation as of the time it was authorized, approved or ratified by the board of directors, committee, or shareholders.
[3] Buddy testified that he sold the property to his daughter. The record reveals, however, that he donated the property to her.