653 So.2d 1241 (1995)
Kirk D. MAESTRI, D.V.M.
v.
DESTREHAN VETERINARY HOSPITAL, INC., et al.
No. 94-CA-1030.
Court of Appeal of Louisiana, Fifth Circuit.
March 28, 1995.
Rehearing Denied May 19, 1995.
Eugene W. Policastri, New Orleans, for plaintiff/appellant.
Don Almerico, Destrehan, for defendants/appellees.
Before GAUDIN, WICKER and GOTHARD, JJ.
WICKER, Judge.
This appeal arises from a suit filed on behalf of Kirk D. Maestri, D.V.M. (Maestri), plaintiff/appellant, against Destrehan Veterinary Hospital, Inc., (DVH), Patrick McKenna, D.V.M. (McKenna), Jack Moreau, D.V.M. (Moreau) and Destrehan Animal Hospital, Inc. (DAH), defendants/appellees. Maestri filed suit individually and as a shareholder of DVH seeking an injunction and damages. In Maestri v. Destrehan Veterinary Hosp., 554 So.2d 805 (La.App. 5th Cir.1989) we reversed the trial judge's granting a preliminary injunction and remanded the case for a trial on the merits. On remand from this court Maestri's claims for loss of business damages due to breach of fiduciary duty and violation of the Unfair Trade Practices Act[1] were *1242 heard by the trial judge. The trial judge dismissed Maestri's claims. Maestri now appeals. We affirm.
In 1984 Maestri and McKenna, veterinarians, formed the corporation known as DVH. Each was a 50% owner. These two parties were the only officers; there were no directors. Management duties were never reduced to writing. However, Maestri managed the corporation from August, 1984 until April, 1985. McKenna then managed it from 1985 until April, 1989.
During this period of time Maestri operated another clinic: River Ridge Veterinary Clinic, Inc. McKenna also operated his own clinic: Lakeside Animal Hospital. In addition, McKenna operated other facilities as well.
When DVH opened, Moreau worked as an employee under a yearly employment contract. In 1987, however, he refused to renew his contract after Maestri refused to allow him to buy into the corporation. His 1986 contract had restrictive covenants. In April, 1989 he was terminated. Prior to this incident he had formed a new corporation with McKenna; namely, DAH. They formed this corporation in September, 1988. Moreau anticipated opening the new facility in July, 1989 which would have been after the two-year restrictive covenant period applied. However, upon his termination, he opened the new hospital.
The new hospital opened next door to the older one.[2] Maestri contends that Moreau and McKenna acted to undermine the success of the older hospital and engaged in various acts which caused him business losses. He also seeks the return of various documents he alleges were taken from DVH by Moreau and McKenna.
The trial judge denied Maestri's claims. He now appeals and specifies the following errors:.
1. The trial judge erred when he found that the defendants, McKenna and Moreau, did not violate the Unfair Trade Practices Act;
2. The trial judge erred when he found that McKenna and Moreau did not breach the fiduciary duty owed to Maestri and the Destrehan Veterinary Hospital, and
3. The trial judge erred in failing to award damages to Maestri which resulted from the breach of fiduciary duty and from the unfair trade practices.

MANDATORY INJUNCTION
We originally vacated the granting of the following mandatory injunction and remanded this matter for a hearing on the merits:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Patrick McKenna, Jack Moreau, and Destrehan Animal Hospital, Inc. immediately return any and all confidential information and files, patient reminder cards, patient x-rays and any other files or documents relating in any way to Destrehan Veterinary Hospital and/or its patients and clients.
Following a hearing on the merits the trial judge correctly denied the mandatory injunction.
Even assuming DVH pursued this action through Maestri[3] to recover the alleged missing items there was ample evidence before the trial judge supporting his conclusion to deny this claim.
The trial judge correctly opined: "at one time we had four clinics working at the same time. Who owes what to whom?" Maestri testified DVH used McKenna's x-ray machine as well as his surgical facility at times. McKenna stated that when he began DVH he sent notices to his clients living in Destrehan informing them of the new facility and advising them to go there for treatment. Additionally, Penelope Law, the receptionist/assistant employed at DVH from approximately August, 1984 until April, 1985, testified that large dogs from Maestri's River Ridge facility were boarded at DVH.
Thus, patients from DVH were oftentimes patients of facilities separately owned by Maestri and McKenna. The evidence reveals *1243 McKenna's Lakeside hospital was used regularly for the taking of x-rays.
At trial there was no showing that any of DVH's x-rays had been removed by McKenna or Moreau. To the contrary, Pamela Schmidt, a client of both Maestri and DVH, testified one week prior to the opening of DAH she had had x-rays taken of her pet. When she returned for test results to Maestri at DVH she was advised to go to the DAH, next door, to get the x-rays. She did not know why the x-rays were at DAH. Nevertheless, these were given to her.
There was no explanation in the record as to why these specific x-rays were at DAH. However, there was ample evidence in the record that DVH had a longstanding practice of having x-rays taken at McKenna's Lakeside office. Nevertheless, Schmidt did obtain her x-rays; these were not kept by DAH.
Maestri testified the "reminder cards" were missing. He explained these are cards completed at the time of a pet's visit in order to mail these as reminders of vaccines. He stated when he took over DVH in April, 1989 there were no reminder cards. He had to go through all of the records in order to look up dates and to make new cards.
McKenna testified the reminder cards were not kept at the DVH facility. They were kept at his office or home. He agreed that Maestri had all of the information in the files to create reminder cards. Additionally, McKenna stated that by the time the first judgment had been rendered so much time had taken place that the cards became dated and of no use. The dated, yearly reminder cards were thrown away. Thus, the issue became moot. Additionally, the information contained on these cards was still available to DVH; the records had not been removed. McKenna stated he did not remove these. There was no showing that Moreau or McKenna removed the records. Furthermore, both McKenna and Maestri as co-owners had access to the patient files.
SHAREHOLDER'S DERIVATIVE ACTION
At trial the judge attempted to clarify for the record the precise cause of action pursued by Maestri: an individual action, a shareholder's action, or both. Maestri's counsel stated he was pursuing both causes of action. We note that DVH was unrepresented at trial.
The evidence establishes that Maestri's claim was strictly an individual one; the corporation did not sue to recover any alleged damages.
We explained in Spruiell v. Ludwig, 568 So.2d 133, 137 (La.App. 5th Cir.1990), writ denied, 573 So.2d 1117 (La.1991):
Pursuant to R.S. 12:1 et seq. a minority shareholder has a right to bring a derivative action on behalf of the corporation. The minority shareholders in a derivative action are only nominal plaintiffs whose right to recover can only be asserted secondarily. C.C.P. art. 596; Robinson v. Snell's Limbs and Braces, 538 So.2d 1045 (La.App. 3rd Cir.1989).
Maestri is not a minority shareholder; he is a 50% owner/shareholder. Furthermore, "in a derivative action, the shareholder bringing the suit is only a nominal plaintiff, and the real party plaintiff is the corporation because the shareholder claims to be suing on behalf of the corporation." Robinson v. Snell's Limbs and Braces of New Orleans, 538 So.2d 1045, 1048 (La.App. 4th Cir.1989).
The Robinson court explained at 1048:
The basic goal of a derivative action is for the shareholder to recover money on behalf of the corporation, and for any innocent shareholders to recover from the wrongdoing officers and directors. Amounts awarded in such an action are therefore recoverable by the corporation from the officers and directors for the benefit of the corporation and all the shareholders [emphasis added].
Regarding McKenna we note the following. We have held in Spruiell at 141:
Corporate officers and directors owe a fiduciary duty to the corporation and its shareholders. LSA-R.S. 12:91; Noe v. Roussel, 310 So.2d 806 (La.1975); Quartana v. Jenks, 436 So.2d 1335 (La.App. 5th Cir.1983). That fiduciary duty requires that:

*1244 "officers and directors.... shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions." R.S. 12:91.
In Landry v. Thibaut, 523 So.2d 1370 (La. App. 5th Cir.1988), writ denied, 526 So.2d 809 (La.1988) we recognized a shareholder could pursue a claim individually for breach of fiduciary duty to the corporation under La.R.S. 12:91 when the damage affects him or her personally or directly. Id. at 1377.
The record is devoid of any evidence showing that Maestri's ownership in DVH had been reduced by McKenna's actions. See, e.g. Wilson v. H.J. Wilson Co., Inc., 430 So.2d 1227 (La.App. 1st Cir.1983), writ denied, 437 So.2d 1166 (La.1983). There was no evidence to show McKenna's actions deprived Maestri of his rightful share of DVH's assets. See, e.g. Noe v. Roussel, 310 So.2d 806 (La.1975).
The nature of the losses alleged by Maestri were indirect and not direct losses to him. The alleged losses would have been suffered by McKenna, the other 50% shareholder, as well. See Palowsky v. Premier Bancorp Inc., 597 So.2d 543 (La.App. 1st Cir.1992).
Even assuming the alleged losses to DVH occurred, Maestri has no legally recognized right to recover these individually since the assets of the corporation belong to it and not to Maestri individually. Bordelon v. Cochrane, 533 So.2d 82, 86 (La.App. 3rd Cir. 1988), writ denied, 536 So.2d 1255 (La.1989). "A corporation is a separate entity distinct from its officers, stockholders, agents, employees or representatives." Korson v. Independence Mall I, Ltd., 593 So.2d 981, 984 (La.App. 5th Cir.1992).
Furthermore, the Robinson court noted at 1048:
... However, it is well established under Louisiana law that an action for mismanagement, fraud or breach of fiduciary duty belongs to the corporate entity and not to the individual shareholder who brings the derivative action [citations omitted; emphasis added].
The case at bar is an action in which a 50% shareholder is suing a former officer and a 50% shareholder for breach of fiduciary duty and unfair trade practices. Additionally, this is an action by a 50% shareholder against a former corporation employee for breach of contract, breach of fiduciary duty and unfair trade practices.[4] Finally, the action seeks a mandatory injunction for the return of documents.
As mentioned previously Maestri did not bring a derivative action on behalf of the corporation. He was also not a minority shareholder. His claim is not that of a minority shareholder who has been deprived of rights by majority shareholders. The issue becomes whether Maestri has an individual action against McKenna and Moreau for breach of fiduciary duty to the corporation and to Maestri as a shareholder. We have held above that he does not have an individual action.
Additionally, the evidence shows Moreau was never an officer or director of DVH. Thus, La.R.S. 12:91 does not apply to him.
We pretermit a ruling on the merits of the claim of alleged losses since that issue is not before us.[5]
*1245 Accordingly, for the reasons stated, the judgment in favor of the defendants, Patrick McKenna, D.V.M., Jack Moreau, D.V.M., and Destrehan Animal Hospital, Inc. and against the plaintiff, Kirk D. Maestri, D.V.M., dismissing Kirk D. Maestri's claims is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] La.R.S. 51:1401, et seq.
[2] The older hospital is now in liquidation although it had not been liquidated at the time of trial.
[3] See discussion regarding shareholder's derivative suit which follows.
[4] DAH, the newly formed corporation by these two defendants was also sued.
[5] Maestri also argues McKenna breached his fiduciary duty to the corporation by drawing an excessive salary. He relies on Normat Industries, Inc. v. Carter, 477 So.2d 783 (La.App. 5th Cir.1985) for the proposition that McKenna could not take advantage of his position for his personal benefit to the detriment of the corporation or to Maestri as a stockholder.

In Normat a 50% stockholder/director sued another 50% stockholder/director/officer of a corporation individually and as a stockholder. The trial court found in favor of the corporation and against the defendant. Thus, the trial court implicitly recognized the 50% shareholder/plaintiff was not directly damaged by the defendant's actions. Landry, supra; Wilson, supra; Noe, supra; Palowsky, supra; Bordelon, supra. The trial judge, however, had refused to find the defendant had breached his fiduciary duty to the corporation. This court amended the judgment to provide that the defendant did violate his fiduciary duty to the corporation and was required to render an accounting. The case was remanded for a hearing on the accounting of funds. The defendant was required to account for funds he expended. He was required to show they were expended for the benefit of the corporation. If unable to make that showing then judgment was ordered to be rendered "in favor of the corporation and against [the defendant] for such amount [emphasis added]." id. at 786.
Thus, in Normat we recognized the right to recover this asset belonged to the corporation and not to the shareholder, individually. Bordelon, supra. In the instant case the corporation was never a plaintiff suing for the alleged losses. Normat is inapposite.
Maestri further argues Moreau was prohibited pursuant to his contract with the corporation from using client information from DVH to announce the opening of DAH. Moreau testified McKenna provided him with these names and addresses for which he used to send announcements of the opening of DAH. McKenna, as 50% owner of the corporation, provided him with the information. Maestri relies on National Oil Service, Inc. v. Brown, 381 So.2d 1269, 1273 (La.App. 4th Cir. 1980) for the proposition that Moreau could not use confidential patient information from DVH for his new practice at DAH.
In National Oil Service the corporation/employer was the entity seeking a preliminary injunction against former employees who entered into a competing business. The corporation/employer in that case was found to be entitled to an injunction on the basis the defendants used unfair methods of competition and trade practices. The case was remanded for trial on the merits. National Oil Service is inapposite because it was the corporation, as the entity, which was suing for the unfair trade practices.
Maestri also contends both Moreau and McKenna violated The Unfair Trade Practices Act, La.R.S. 51:1405(A), and relies on Roustabouts, Inc. v. Hamer, 447 So.2d 54, 548 (La.App. 1st Cir.1984) and Dufau v. Creole Engineering, Inc., 465 So.2d 752 (La.App. 5th Cir.1985), writ denied, 468 So. 2d 1207 (La.1985). He asserts these parties raided assets and client information as well as engaged in actions designed to put DVH out of business. These cases, however, are inapposite; both were suits by the corporation.
Maestri further argues the trial judge erred in failing to award him damages, individually. We find no error in the trial judge's denial of this claim for the reasons stated. In the prior appeal there had not yet been a hearing on the merits. However, now after trial on the merits, the record evidence clearly establishes Maestri has no legally recognized right as an individual to recover alleged losses incurred by DVH.