FREDERICKA HOMBERG WICKER, Judge.
 

 1 ¡¿Henry Leonce Salassi, IV filed suit against his former spouse Bonnie Perry Salassi seeking to revoke a gratuitous donation made in 1997. The trial judge revoked the donation and this appeal followed. For the
 
 foregoing reasons,
 
 we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 Henry and Bonnie Salassi were married in Jefferson Parish on February 24, 1990 and have resided there since that time.
 
 *672
 
 On April 24, 1991, the succession of Henry Salassi, IV’s grandmother Thelma Gares Salassi was opened. Mr. Salassi’s father Henry Salassi, III and his aunt Joan Sa-lassi Rey each inherited from this succession a one-half undivided interest in property located at 208-210 Jefferson Avenue, Metairie, Louisiana (the “Jefferson Avenue property”). On September 10,1991 Henry Salassi, III donated to Henry Salassi, IV and his sister Jeanine Salassi his interest in the Jefferson Avenue property. That same day, Henry Salassi, IV and Jeanine Salassi purchased Joan Salassi Rey’s interest in the Jefferson Avenue property. Bonnie Salassi intervened in the act declaring that that the Jefferson Avenue property was Henry Salassi, IVs separate property, that the property 1¡¡formed no part of the community between them, and that no community funds were used to purchase Henry’s portion of the property (the “1991 Dual Declaration”).
 

 Henry Salassi, IV and Jeanine Salassi thereafter each owned an undivided one-half interest in the Jefferson Avenue property. On September 4,1997, Henry gratuitously donated one-fourth of his one-half interest in the Jefferson Avenue property to his wife Bonnie (the “1997 donation”). Henry Salassi, IV filed for divorce on May 18, 2004, which was subsequently granted on February 15, 2006.
 

 On February 9, 2007, Bonnie Salassi filed a Petition to Nullify the 1991 Dual Declaration. In the February 2007 petition, Bonnie alleged that she was “forced to sign the cash act of sale by means of fraud and duress.” In particular, Bonnie Salassi alleged that she was advised “that if she did not sign the act of sale as drafted she would be expelled from the home with their first minor child and deliver the second child on her own without any assistance from the Salassi family.” Bonnie also alleged that Henry lied to her regarding the meaning of the declaration. In response, Henry filed an Exception of Prescription and a Request For Attorney Fees, both of which were granted by the trial court. Bonnie Salassi filed a writ application in this Court requesting a review of the exception. The writ was denied by this Court on August 15, 2007.
 
 Salassi v. Perry,
 
 07-C-574 (La.App. 5 Cir. 8/15/07) (unpublished writ disposition).
 

 On June 6, 2007, Henry Salassi, IV filed a Petition to Revoke the 1997 donation based upon Bonnie Salassi’s alleged ingratitude. After a hearing on October 18, the domestic commissioner recommended that the Petition to Revoke be denied, and an interim judgment was signed to that effect. Henry Salassi filed an Objection to Domestic Commissioner Order on October 22, 2007. On October 30, 2007, the trial court ordered that an evidentiary hearing would be held on | ¿December 14, 2007 to address the Petition to Revoke. Bonnie Salassi filed a Memorandum in Opposition to Revocation of Gratuitous Donation on October 30, 2007. In the Memorandum, Bonnie claimed that the statements made in her Petition to Nullify the 1991 Dual Declaration were subject to a qualified privilege because they were made during the course of a judicial proceeding. Further, Bonnie complained that because her Petition to Nullify the 1991 Dual Declaration had previously been dismissed as prescribed, the trial court never considered the “merits regarding the fraudulent dual declaration located within the act of cash sale.” An evidentiary hearing on the Petition to Revoke the 1997 donation was held on December 14, 2007. At the conclusion of the hearing, the district judge ruled in favor Henry Salassi, IV and thereafter signed a judgment revoking the 1997 donation. This timely appeal followed.
 

 Bonnie Salassi assigns three errors to the proceedings below. First, she alleges
 
 *673
 
 that the trial court erred in not allowing testimony concerning the 1991 Dual Declaration and sale of the Jefferson Avenue property. Second, she contends that the trial court erred in revoking the 1997 donation because the donation was irrevocable under Louisiana law. Finally, she claims that the trial court erred by failing to declare the 1991 Dual Declaration void for fraud and the Jefferson Avenue residence to be community property. We will consider Bonnie Salassi’s second assignment of error before her first and third assignments because there would be no need to consider her first and third assignments should we find merit in her second assignment.
 

 SECOND ASSIGNMENT OF ERROR
 

 In her second assignment of error, Bonnie argues that the 1997 donation was irrevocable under Louisiana law and that the trial court therefore erred in revoking |fithe donation. Bonnie alleges that the 1997 donation is governed by La. R.S. 9:2351, which reads thus:
 

 Every donation made after twelve o’clock noon, July 29, 1942, by a married person to his or her spouse shall be as irrevocable as if made to a stranger. However, where the donation is made by notarial act the donor may reserve the right of revocation by express stipulation therein. Any right of revocation so reserved unless renounced as provided in R.S. 9:2352, may be exercised at any time during the life of the donor, whether or not the marriage is then in existence, and whether or not the donee is then alive.
 

 According to Bonnie, the 1997 donation is irrevocable because Henry did not expressly reserve the right of revocation in the act of donation.
 

 Donations inter vivos are generally irrevocable.
 
 Busse v. Lambert,
 
 00-1032 (La.App. 5 Cir. 10/31/00), 773 So.2d 182, 183. Interspousal donations were formerly always revocable under former La. C.C. art. 1749, however, that article was repealed by Acts 1942, No. 187 and replaced with La. R.S. 9:2351. In discussing the change in the law, the Supreme Court opined that:
 

 [t]he effect of this revision in the law of donations between married persons was to make interspousal donations as irrevocable as any other donation. Therefore, since 1942, revocation of donations between spouses must be governed by the same articles which govern all
 
 inter vivos
 
 donations.
 

 Larocca v. Larocca,
 
 597 So.2d 1000, n. 11 (La.1992)
 

 Donations inter vivos can be revoked on account of the ingratitude of the donee. La. C.C. art. 1556. Revocation on account of ingratitude can only take place if the donee has “attempted to take the life of the donor” or if the donee “has been guilty towards [the donor] of cruel treatment, crimes, or grievous injuries.” La. C.C. art. 1557.
 
 [1]
 

 There is a considerable paucity of Louisiana cases that have addressed what constitutes “cruel treatment, crimes, or grievous injuries.” In
 
 Perry v. Perry,
 
 507 |6 So.2d 881 (La.App. 4 Cir.1987), the Fourth Circuit Court of Appeal came to the conclusion that;
 

 “[i]njuries” include any act naturally offensive to the donor. It may be the adultery of one of the spouses.... The
 
 *674
 
 act may consist of slanderous charges; of a seizure levied by the donee against the donor of whom he is creditor; or, in a proper case, even of the refusal to consent to the revocation.
 

 Perry,
 
 507 So.2d at 833 (emphasis added).
 

 In
 
 Spruiell v. Ludwig,
 
 568 So.2d 133 (La.App. 5 Cir.1990), this Court revoked a donation on the basis of ingratitude when the donee referred to the donor as a “crooked thief’ and accused her of violating federal racketeering statutes. We reasoned that the donees “sought to obtain more of the family property for themselves” through an intentional scheme which “implied unfounded claims of criminal activity.”
 
 Id.
 
 at 138. Other Louisiana courts have held that cruel treatment or grievous injury sufficient to revoke a gratuitous donation may include seizing property belonging to a parent, filing suit against a parent alleging criminal activity, or slandering the memory of the donor.
 
 See, e.g., Sanders v. Sanders,
 
 33,865 (La.App. 2 Cir. 9/27/00), 768 So.2d 739 (donee denied donor was his father and told third parties that he wished donor would die);
 
 Whitman v. Whitman,
 
 31,814 (La.App. 2 Cir. 3/31/99) 730 So.2d 1048 (donee committed adultery).
 

 Mindful of these principles, we conclude that Bonnies argument is misplaced. The Supreme Court has indicated that the law of donations with respect to married persons is the same as the law with respect to unmarried persons. Therefore donations inter vivos to a spouse can be revoked due to the ingratitude of the same spouse. In her petition for nullity, Bonnie alleged that Henry and Henrys father forced her to sign the 1991 dual declaration by means of fraud and duress. In addition, Bonnie alleged “that if she did not sign the act of sale as drafted she would be expelled from the home with their first minor child |Yand deliver the second child on her own without any assistance from the Salassi family.” In his Petition to Revoke, Henry noted that “[b]ased upon the blatantly untruthful, inaccurate, and defamatory allegations contained in Ms. Salassi’s petition, Mr. Salassi has suffered grievous injuries sufficient to revoke his donation as Ms. Salassi’s actions constitute acts naturally offensive to Mr. Salassi.” At the conclusion of the hearing, the trial court stated,
 

 The allegations contained in [Bonnie’s] petition, I believe, arise to cruel treatment, crimes, or egregious injuries under [former La. C.C. art.]1560. The allegations made in the petition allege that the Plaintiff, the father of, then two year old Christina and, at the time, Heather being an unborn fetus, eight months term, were going to be kicked out into the street with no place to live, that no support of any kind would be given, and that the infant would be born under those conditions.
 

 Obviously, the record is clear that those children are now approximately fifteen and fourteen years of age. I certainly understand the testimony of the Plaintiff where those hurtful words caused him great distress, not to mention the stress that could occur if those children learned of the allegations contained in the petition.
 

 And, for those reasons, I find the testimony of the husband, the Plaintiff, I find his testimony more credible. And I find question with the contradictory statements made by the Defendant.
 

 When reviewing findings of fact the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the conclusion was a reasonable one.
 
 Adams v. Rhodia, Inc.,
 
 07-2110, p. 10 (La.5/21/08), 983 So.2d 798, 806. In this case, the trial court concluded
 
 *675
 
 that the allegations contained in Bonnies petition rose to the level of cruel treatment and grievous injury under former La. C.C. art. 1560. We cannot conclude that this finding was unreasonable. Consequently, this assignment of error has no merit and we can now discuss Bonnie Salassis first and third assignments of error.
 

 FIRST ASSIGNMENT OF ERROR
 

 )sIn her first assignment of error, Bonnie Salassi contends that the trial court erred by refusing to allow testimony regarding the succession of Thelma Gares Salassi. More specifically, she claims that she should have been able to elicit testimony demonstrating that Henry’s father Henry Salassi, III perpetrated fraud on the court by declaring that he and Joan Salassi Rey were the only lawful heirs of Thelma Gares Salassi. Bonnie Salassi alleges there was a third lawful heir of Thelma Salassi. Bonnie Salassi alleges that this testimony is admissible pursuant to Louisiana Code of Evidence articles 607 and 803(15).
 

 La. C.E. art. 607
 

 La. C.E. art. 607(A) provides that the “credibility of a witness may be attacked by any party, including the party calling him.” Moreover, “a party ... may examine [the witness] concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony. The trier of fact determines the credibility of witnesses, and within the bounds of rationality, may accept or reject the testimony.”
 
 State v. Wilson,
 
 07-961, p. 9 (La.App. 5 Cir. 4/15/08), 984 So.2d 870, 875. It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence.
 
 State v. Toussaint,
 
 98-1214, p. 6 (La.App. 5 Cir. 5/19/99), 734 So.2d 961, 964. When findings of fact are based on the credibility of witnesses, the manifest error standard demands great deference to the trier of fact’s findings.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989).
 

 Bonnies reliance on La. C.E. art. 607 is misplaced. Bonnies counsel was given extensive latitude to attack Henrys credibility at the hearing. For example, during Henrys cross examination, Henrys counsel objected to a line of questioning regarding a mortgage placed on the Jefferson Avenue property and the alleged use of community funds to pay off the note. Bonnies counsel argued that |9he was attacking Henrys credibility. The trial judge overruled the objection and allowed the line of questioning to proceed. Every other objection made by Henrys counsel related to argumentative questions, questions that had already been asked and answered, or a request to read from a document already admitted into evidence. Bonnies counsel was given an additional opportunity to cross examine Henry during Henrys rebuttal on the Rule to Revoke, but declined to do so.
 

 When the hearing had concluded, the trial judge determined that Henrys testimony was more credible than Bonnies. It is not within the province of this Court to assess the credibility of testimony or the credibility of witnesses. It is within the province of this Court to conclude that the trial judge gave Bonnie sufficient latitude to attack Henrys credibility.
 

 La. C.E. art. 803(15)
 

 La. C.E. art. 803(15) provides that “[a] statement contained in a document purporting to establish or affect an interest in property” is not hearsay “if the matter stated was relevant to the purpose of the document.” The circumstances under which dispositive documents are executed and the requirement that the recital be germane to the purpose of the document are believed to be adequate guarantees of
 
 *676
 
 trustworthiness. Fed. R. Evid 803(15), note.
 

 La. C.E. art. 803(15) has no bearing on this case. Bonnie’s counsel argued at the hearing that Henry and his family had committed a “fraud” upon the court because of a misrepresentation in the judgment of possession in Thelma Gares Salas-si’s succession. According to Bonnie, there were actually three lawful heirs instead of two as indicated in the judgment. Nowhere in the judgment of possession is a third lawful heir mentioned. For La. C.E. art. 803(15) to apply to the instant appeal, there must be a statement contained in the judgment of possession purporting to establish or affect an interest in property. Bonnie cannot 1 margue that the judge should have allowed testimony regarding the supposed third heir under La. C.E. art. 803(15) if the document itself does not mention the third heir. Moreover, Henry’s counsel objected to the testimony regarding Thelma Salassi’s succession on the basis of relevance, not that the judgment of possession was inadmissible hearsay. Bonnie’s argument is better addressed in terms of the aforementioned discussion of credibility. We find that the trial judge’s decision to disallow the testimony was reasonable. Accordingly, this assignment of error has no merit.
 

 THIRD ASSIGNMENT OF ERROR
 

 In her final assignment of error, Bonnie alleges that the trial court erred by failing to declare 1991 Dual Declaration void for fraud and duress. Although it is not entirely clear from her brief, Bonnie appears to argue that La. C.C. art. 2342(B) is dispositive to this assignment of error. La. C.C. art. 2342(B) provides:
 

 [Wjhen [a spouse declares that property has been purchased with his or her separate property], an alienation, encumbrance, or lease of the thing by onerous title, during the community regime or thereafter, may not be set aside on the ground of the falsity of the declaration.
 

 Bonnie contends that La. C.C. art. 2342(B) permits her to attack the 1991 Dual Declaration because the Jefferson Avenue property has not been alienated, encumbered, or leased since 1991. Therefore, the argument follows, the trial court “erred in not declaring the property acquired by Henry Leonce Salassi, IV and Bonnie Perry Salassi ... to be community property.”
 

 The legal regime of community acquets and gains applies to all spouses domiciled in Louisiana. La. C.C. art. 2334. Things in possession of a spouse during the legal regime are presumed to be community property, but either spouse may prove that they are separate property. La. C.C. art. 2340. Under the doctrine of estoppel by deed, a declaration by a spouse in an act of acquisition that things In are acquired with separate funds as separate property may not be controverted by the other spouse if the other spouse concurred in the act of acquisition. La. C.C. art. 2342(A). Even if the other spouse concurs in the act, the concurring spouse is not estopped from asserting that the property is community property where he or she concurred due to error, fraud, or duress.
 
 See, e.g., Rousseau v. Rousseau,
 
 209 La. 428, 24 So.2d 676, 677 (1946). However, a person “who has a right to set aside such transactions on the ground of the falsity of the declaration ... shall have six months ... to initiate proceedings to set aside such transactions or otherwise be forever barred from exercising such right or cause of action.” La. C.C. art. 2342(C)(2).
 

 Consent may be vitiated by error, fraud, or duress. La. C.C. art 1948. A vice of consent renders a contract a relative nullity. La. C.C. art.2031. An “[a]c
 
 *677
 
 tion of annulment of a relatively null contract must be brought within five years from the time the ground for nullity either ceased, as in the case of incapacity or duress, or was discovered, as in the case of error or fraud.” La. C.C. art.2032. Thus, there is a five year prescriptive period to annul a relatively null contract on account of fraud or duress. More than seventeen years have passed since the 1991 declaration was executed. Bonnie has presented no evidence to this Court which would otherwise establish that prescription has not run.
 

 Bonnie’s reliance on
 
 Levatino v. Levatino,
 
 506 So.2d 858 (La.App. 1 Cir.1987) in her attempt to evade the prescriptive period is unavailing. In
 
 Levatino,
 
 the plaintiff signed a document declaring that an immovable had been purchased with the defendant’s separate property. After the plaintiff and defendant separated four years later, the plaintiff sought a declaratory judgment that the immovable was community property on the basis that she had been induced to sign the declaration due to the fraudulent misrepresentations of the defendant.
 
 Levatino,
 
 506 So.2d at |12 859. The defendant argued that the action was prescribed based on the six month prescriptive period of La. C.C. art. 2342(C)(2). The court of appeal disagreed, holding that “the controlling prescriptive period is the ten years as set forth in La.C.C. art. 3499”
 
 [2]
 
 because the plaintiff had “set forth facts which if proven would constitute [mutual] error.”
 
 Id.
 
 at 863. We agree with Bonnie that
 
 Levatino
 
 stands for the general proposition that a dual declaration may be attacked and set aside on account of the falsity of the declaration. However, the court held that the right to attack a declaration was subject to a ten year prescriptive period. Bonnie has alleged fraud in her petition, a claim for which must be brought within five years from the time the ground for nullity either ceased or was discovered. Even if we were to use the ten year prescriptive period of La. C.C. art. 3499 applicable to mutual error, Bonnie’s claim would have still prescribed more than seven years ago.
 

 Accordingly, this assignment of error has no merit.
 

 CONCLUSION
 

 Accordingly, for the reasons stated, the judgment revoking the 1997 donation is affirmed. Costs to be paid by appellant.
 

 AFFIRMED.
 

 [1]
 

 . La. C.C. art. 1557 was formerly codified in La. C.C. art. 1560. It was moved to its present location by Acts 2008, No. 204, effective January 1, 2009. Acts 2008, No. 204 changed the law in part by eliminating the third ground for revoking a donation for ingratitude; refusing the donor food when in distress.
 

 [2]
 

 . La. C.C. 3499 states in toto, "[ujnless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years."