NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-430

DAVID SCOTT TRAHAN

VERSUS

KAYCEE REBECCA MARTIN, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2016-2915
HONORABLE DAVID A. RITCHIE, DISTRICT JUDGE

**********

VAN H. KYZAR
JUDGE

**********

Court composed of John E. Conery, Van H. Kyzar, and Candyce G. Perret, Judges.

AFFIRMED.

Skipper M. Drost
Marianna Schlag
1 Lakeshore Drive, Suite 100
Lake Charles, LA 70601
(337) 436-4546
COUNSEL FOR PLAINTIFF/DEFENDANT-IN-
RECONVENTION/APPELLANT:
    David Scott Trahan

Gregory N. Wampler
Lemoine & Wampler
607 Main Street
Pineville, LA 71360
(318) 473-4220
COUNSEL FOR DEFENDANT/PLAINTIFF-IN-
RECONVENTION/APPELLEE:
    Kaycee Rebecca Martin

Donald W. Martin
P.O. Box 2457
Leesville, LA 71496
(832) 643-5801
COUNSEL FOR DEFENDANTS/APPELLEES:
    William R. Martin
    Cynthia Martin

David L. Wallace
P. O. Box 489
DeRidder, LA 70634
(337) 462-0473
COUNSEL FOR DEFENDANTS/APPELLEES:
    Thomas Evans
    Tracie Evans

James H. Gibson
Michael O. Adley
Gibson Law Partners, LLC
P. O. Box 52124
Lafayette, LA 70505
(337) 761-6023
COUNSEL FOR DEFENDANTS/APPELLEES:
    Alvin C. "Chuck" Dowden, Jr.
    Ashley Stanley
    Kaylee Basco

**Robert S. Kleinschmidt, Jr.**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **H. Lynn Jones, II, Clerk of Court**

**KYZAR, Judge.**

The defendant-in-reconvention, David Scott Trahan, appeals from a trial court judgment in favor of the plaintiff-in-reconvention, Kaycee Rebecca Martin, revoking a donation inter vivos on the grounds of ingratitude and dismissing his claims against the remaining defendants in the principal demand. For the reasons specified herein, we affirm.

## FACTS AND PROCEDURAL HISTORY

The facts of this case were set forth in a previous unpublished opinion of this court denying a motion to dismiss the instant appeal for lack of jurisdiction filed by defendants, Alvin C. Dowden, Jr., Kaylee Basco, and Ashley Stanley. *Trahan v. Martin*, 19-430 (La.App. 3 Cir. 9/18/19) (unpublished opinion). We restate those facts here:

> Plaintiff-Appellant, David Scott Trahan (Trahan), filed a Rule to Cancel Mortgage and Donation on July 15, 2016. The petition has been amended four times since the original filing. At issue herein is a piece of property located in Calcasieu Parish which Trahan alleged was donated to him by Defendant, Kaycee Rebecca Brown Martin (Kaycee), on November 10, 2014. Despite having purportedly donated the property to Trahan, on May 19, 2016, Kaycee executed and filed a mortgage in favor of Defendant, William Randall Martin (Randy), wherein she mortgaged the allegedly already-donated property as security for a debt in the amount of $225,000.00, without Trahan's knowledge and/or consent. Then, on June 7, 2016, Kaycee executed and filed a donation inter vivos allegedly given by Trahan in favor of Kaycee wherein Kaycee allegedly fraudulently donated the same property from Trahan back to herself, without Trahan's knowledge and/or consent. The purportedly fraudulent act of donation was notarized by Defendant, Alvin C. Dowden, Jr. (Dowden), and witnessed by Defendants, Ashley Stanley (Stanley) and Kaylee Basco (Basco).
>
> On August 25, 2016, after suit had been filed on July 15, 2016, Kaycee executed and filed a Dation en Paiement in favor of Randy wherein the title to the property was transferred to Randy, and, in doing so, this cancelled the mortgage. On September 2, 2016, Randy and Defendant, Cynthia Martin (Cynthia), filed a sale and mortgage of the property in favor of Defendants, Tracie L. Evans (Tracie) and Tomas P. Evans (Tomas), transferring title to the property to Tracie and Tomas.

In his original and four amending petitions, Mr. Trahan named as defendants Kaycee, William Randall Martin and Cynthia Martin (Kaycee's parents), Tracie Lynn Evans and Thomas P. Evans[1] (Kaycee's sister and brother-in-law), Alvin C. "Chuck" Dowden, Jr. (the attorney and notary on the June 7, 2016 donation), Kaylee Basco and Ashley Stanley (Mr. Dowden's employees and witnesses to the June 7, 2016 donation), and H. Lynn Jones, II, Clerk of Court for Calcasieu Parish.

Mr. Trahan asserted that on November 10, 2014, Kaycee donated to him a house and lot described as Lot 12 of Barcellona Subdivision, Phase III in Calcasieu Parish, bearing the municipal address of 935 Magdalena Street, Sulphur, Louisiana 70663. He asserted that despite this donation, four separate documents effecting this property were executed and recorded without his consent, with the intent to defraud him of his property, and should be declared null. The four documents consisted of: 1) a May 19, 2016 mortgage executed by Kaycee to Mr. Martin to secure a debt of $225,000.00; 2) a June 7, 2016 donation of the subject property from Mr. Trahan to Kaycee, containing his forged signature, which was filed of record on June 24, 2016; 3) an August 25, 2016 dation en paiement executed by Kaycee, transferring title of the subject property to Mr. Martin and cancelling the May 19, 2016 debt and mortgage; and 4) a September 2, 2016 sale of the property by Mr. and Mrs. Martin to Mr. and Mrs. Evans.

Mr. Trahan sought damages against Kaycee, Mr. and Mrs. Martin, and Mrs. Evans individually and based on their conspiracy to defraud him of his property. He further sought damages from Mr. Dowden for notarizing and recording the June 7, 2016 donation, and his employees, Ms. Basco and Ms. Sylvester, for witnessing the donation. Mr. Trahan next alleged that Kaycee, Mr. and Mrs. Martin, Mrs. Evans,

---

[1] Thomas P. Evans was incorrectly identified as Tomas P. Evans in Mr. Trahan's petitions.

2

Mr. Dowden, Ms. Basco, and Ms. Sylvester violated the Louisiana Racketeering Act by committing the crimes of injuring public documents, a violation of La.R.S. 14:132, and failing or maintaining false public records, a violation of La.R.S. 14:133, by executing and recording the four fraudulent documents. Thus, he alleged that he was entitled to civil damages pursuant to La.R.S. 15:1356(E). Finally, Mr. Trahan requested that a writ of mandamus issue to Mr. Jones, as Calcasieu Parish Clerk of Court, ordering him to cancel and erase the encumbrances on the subject property.

Mr. and Mrs. Martin answered the original and four amended petitions and filed a reconventional demand, naming Mr. Trahan and Geaux Cajun Catering, LLC (Geaux Cajun) as defendants-in-reconvention. In their reconventional demand, they alleged that Mr. Trahan and Geaux Cajun were unjustly enriched by $118,453.23 in personal loans and the unpaid loan of "tens of thousands of dollars in other funds" made to them by the Martins to enable them to operate a frozen yogurt business, Geaux Cajun Froyo. The Martins also sought judgment on the balance of a May 15, 2015 promissory note they had purchased from the original holder, Sabine State Bank & Trust Company, which had a current balance of $199,858.22 and on which Mr. Trahan and Geaux Cajun were in default. They further sought to pierce the corporate veil and impose personal liability upon Mr. Trahan for all debts, claims, and actions arising from his management of Geaux Cajun. A review of the record reveals that Mr. Trahan, as defendant-in-reconvention, never answered the Martins' reconventional demand.

Kaycee, likewise, answered Mr. Trahan's original and four amended petitions and, as plaintiff-in-reconvention, filed a reconventional demand against Mr. Trahan and Geaux Cajun, as defendants-in-reconvention. In her reconventional demand, she asserted that she and Mr. Trahan entered into a business arrangement to operate

3

Geaux Cajun as a "food services and catering business[,]" whereby Mr. Trahan would provide his "knowledge, experience, and labor" to manage the business, and she would provide labor and the necessary capital. Kaycee alleged that following their purchase of Geaux Cajun, Mr. Trahan violated the fiduciary duties he owed to her and Geaux Cajun by his mismanagement and conversion of Geaux Cajun's assets to his own personal use. She sought damages related to Mr. Trahan's actions, the return of her capital contributions to Geaux Cajun, and the appointment of a liquidator to investigate Mr. Trahan's actions. She alleged Mr. Trahan committed the following acts in mismanaging Geaux Cajun:

1. [Mr. Trahan] has made withdrawals from the bank accounts belonging to [Geaux Cajun], for purposes which do not benefit the business entity, and were not intended by [Mr. Trahan] to further the interests of the business enterprise.

2. Upon information and belief, [Mr. Trahan] has unreasonably made use of the instruments and other assets of [Geaux Cajun], for his own personal gain, to the exclusion of the other members of the business entity.

3. Through [Mr. Trahan's] management of [Geaux Cajun], the entity was sued for trademark infringement, causing the entity to incur legal, and other costs associated with the settlement of the claims made against it[,] expenses and to settle the claims made against it.

In the alternative, Kaycee alleged that should Mr. Trahan prevail in having the June 7, 2016 donation nullified, her November 10, 2014 donation of the subject property to him should be revoked due to ingratitude. She alleged that Mr. Trahan's mismanagement of Geaux Cajun and his "harmful and baseless allegations against her and her family in his pleadings" amounted to cruelty, crimes, and grievous injury. There is nothing in the record to indicate that Mr. Trahan answered Kaycee's reconventional demand.

4

On July 23, 2018, as plaintiff-in-reconvention, Kaycee moved for summary judgment to have the November 10, 2014 donation from her to Mr. Trahan revoked due to ingratitude. She argued that Mr. Trahan had shown repeated instances of ingratitude towards her, including baselessly accusing her and her family of being criminal racketeers, using Geaux Cajun's money to make personal purchases, and refusing to return the donated property to her after being requested to do so. Kaycee introduced documents in support of her motion, consisting of Mr. Trahan's third and fourth amended petitions, excerpts from Mr. Trahan's deposition, the November 10, 2014 inter vivos donation, the June 7, 2016 inter vivos donation, her reconventional demand against Mr. Trahan, and her affidavit. While Mr. Trahan opposed Kaycee's motion, he failed to introduce any supporting documents into the record.

A hearing was held on the motion on January 11, 2019. Also, before the trial court were two motions for summary judgment filed by Mr. Dowden, Ms. Basco, and Ms. Stanley. These motions sought summary judgment on Mr. Trahan's claims for loss of property, economic loss, and emotional distress. At the close of the hearing, the trial court orally held:

> [F]or all of the reasons that are set forth in the Statement of Uncontested Facts of Ingratitude, I am going to grant the Motion for Summary Judgment. I do find that the – that the – there's no genuine issue of material fact. . . . The Defendant's – and – Plaintiffs-in-reconvention are entitled to summary judgment, as a matter of law, with regard to – that – that the donation of – the original donation to Mr. Trahan should be revoked, and I'm granting the summary judgment on that – on that issue, and – which makes the other – the other motions moot, at this point.
>
> . . . .
>
> . . . I feel like, in light of this entire case, and the way everything has transpired, and – and the way everything – You know, I feel like that's the – the best resolution to this case, because I – To me, just from everything that I've read about it, I really think that Mr. Trahan has – has really conned this poor lady, that he was – they were in business together and [he] has taken advantage of her.

5

And I – And I think this – to require this case to continue to go on would be a – would be – would not be in the interest of justice. . . .

. . . .

And I do want to make it clear; I did not consider this – this RICO stuff, at all, in my decision, because I don't think it – I don't think it's – it's applicable to this –[.]

A written judgment was rendered on February 8, 2019, revoking the November 10, 2014 donation for ingratitude and ordering the cancelation of the donation from Calcasieu Parish Conveyance Book 3998. The judgment also held that the motions for summary judgment filed by Mr. Dowden, Ms. Basco, and Ms. Stanley were deemed moot based on the judgment revoking the November 10, 2014 donation. It further held that "all issues and claims pertaining to the alleged forgery of the June 7, 2016 Donation Inter Vivos" were deemed moot, but specifically reserved the claims asserted by Kaycee and Mr. and Mrs. Martin in their reconventional demands.

In its February 19, 2019 written reasons for judgment, the trial court stated, in part, as follows:

The record, specifically the deposition of David Scott Trahan taken on January 4, 2018 attached to the Motion for Summary Judgment on Revocation, shows that following the initial donation from Ms. Martin to Mr. Trahan, Mr. Trahan frequently intermingled personal and business funds and spent money from the business he co-owned with Ms. Martin on personal purchases, including payment for visiting doctors, landscaping, paying off personal credit card debt, purchasing a pool, and purchasing a vehicle that was put in both his name and the name of the business and later traded in for a personal vehicle. In so doing, Mr. Trahan took advantage of Ms. Martin. Additionally, the record shows that Mr. Trahan has refused to consent to revocation of the donation after being requested to do so.

Accordingly, the Court accepts the reasons stated by Ms. Martin in the Statement of Uncontested Facts submitted to the Court, and finds that the above mentioned acts of David Scott Trahan are clearly acts of ingratitude. As such, as it relates to the Motion for Summary Judgment on Revocation, there are no genuine issues of material fact, and the mover is entitled to judgment as a matter of law.

6

Due to the Court's granting of the motion for summary judgment on the issue of revocation of the initial donation, the issues concerning the validity of the alleged second donation contained within the other motions for summary judgment are moot. It is to be noted, as it was in the oral ruling of the Court, that the Court did not take into consideration the claim of Ms. Martin regarding baseless allegations of racketeering.

It is from this judgment that Mr. Trahan appeals. On appeal, he asserts the following allegations of error:

[T]he Trial Court erred in revoking the Act of Donation, dated November 10, 2014 and recorded on November 12, 2014 in conveyance book 3998 on page 741, records of Calcasieu Parish, Louisiana on the grounds of ingratitude.

[T]he Trial Court erred in declaring that *"all other issues and claims pertaining to the alleged forgery of June 7, 2016 Donation Inter Vivos filed and recorded on June 24, 2016, in Conveyance Book 4122, Page 485 under registry no. 3233795, records of Calcasieu Parish, Louisiana, are hereby deemed moot."* (see Judgment, Exhibit <sup>["]</sup>B") Thereby deeming the remaining issues as moot, essentially allowing [Kaycee] off the hook for her illicit actions in the subsequent encumbrance and property transfers.

Mr. Dowden, Ms. Basco, and Ms. Stanley filed an appellate brief in response to Mr. Trahan's appeal, which was adopted by both Kaycee and Mrs. Evans. Mr. Dowden, Ms. Basco, and Ms. Stanley also filed a motion to dismiss Mr. Trahan's appeal, arguing that because the trial court's February 8, 2019 judgment was a partial final judgment, this court lacked jurisdiction to hear the appeal. Specifically, they argued that the judgment lacked decretal language dismissing any of the parties from the suit, did not dispose of the entire matter, and was not designated a final judgment.

In an unpublished opinion, we dismissed the motion to dismiss, holding that "[a]lthough the merits of the instant case were not decided in whole, the trial court's ruling dismissed, or rendered moot, all claims asserted by Trahan against [Mr. Dowden, Ms. Basco, and Ms. Stanley], i.e., the principal demand in this case." *Trahan*, 19-430, p. 3. Thus, we held that the February 8, 2019 judgment was a partial

7

final judgment pursuant to La.Code Civ.P. art. 1915(A), and as such, immediately appealable. La.Code Civ.P. art. 1911(B).

## OPINION

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880. The burden of proof in a summary judgment motion rests with the mover. La.Code Civ.P. art. 966(D)(1). However, pursuant to La.Code Civ.P. art. 967(B):

> When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

Summary judgment is appropriate "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

The only supporting documents which may be filed in support or opposition to a motion for summary judgment are "pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La.Code Civ.P. art. 966(A)(4). In ruling on the motion, "[t]he court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made." La.Code Civ.P. art. 966(D)(2). "However, arguments and pleadings, including allegations made in memoranda, are not evidence." *Harris v. Union Nat'l Fire Ins. Co.*, 19-443, p. 9 (La.App. 1 Cir. 1/15/20), __ So.3d __, __ n.6. As noted in comment (c) of the 2015 Official Comments to La.Code Civ.P. art. 966, "Although a memorandum is not a pleading or evidence, it

8

is a proper document that can be used by a party to advance his arguments in support of or in opposition to the motion."

Appellate courts review summary judgments *de novo*, applying the same criteria used by the trial court to determine whether summary judgment is appropriate; "i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Murphy v. Savannah*, 18-991, p. 7 (La. 5/8/19), 282 So.3d 1034, 1038.

Among other causes, a "donation inter vivos may be revoked because of ingratitude of the donee[.]" La.Civ.Code art. 1556. Ingratitude results when the "donee has attempted to take the life of the donor" or if the donee has been guilty towards the donor of "cruel treatment, crimes, or grievous injuries." La.Civ.Code art. 1557. Upon revocation, the donee returns the thing given or, if unable to return it, restores the value of the thing donated, based on the value of the thing at the time the revocation action was filed. La.Civ.Code art. 1560.

Aubry and Rau, in 3 Civil Law Translations, Aubry & Rau, *Droit Civil Français*, Testamentary Successions and Gratuitous Donations, § 708, p. 404 (Carlos E. Lazarus, trans.) (1969) (footnotes omitted), defined grievous injuries:

> *Injuries* include any act naturally offensive to the donor. It may be the adultery of one of the spouses. . . . The act may consist of slanderous charges; of a seizure levied by the donee against the donor of whom he is creditor; or, in a proper case, even of the refusal to consent to the revocation.

This language has been quoted in *Petrie v. Michetti*, 10-122, p. 18 (La.App. 5 Cir. 1/11/11), 59 So.3d 430, 440; *Salassi v. Salassi*, 08-510, p. 6 (La.App. 5 Cir. 5/12/09), 13 So.3d 670, 673-74; *Erikson v. Feller*, 04-1033, p. 5 (La.App. 3 Cir. 12/8/04), 889 So.2d 430, 433; *Spruiell v. Ludwig*, 568 So.2d 133, 138 (La.App. 5 Cir. 1990), *writ*

9

*denied*, 573 So.2d 1117 (La.1991); and *Perry v. Perry*, 507 So.2d 881, 883 (La.App. 4 Cir.), *writ denied*, 512 So.2d 465 (La.1987).

The following actions have been found to constitute injuries sufficient to revoke a donation on the grounds of ingratitude: 1) Conversion and/or misappropriation of company funds by a co-owner, *Bihm v. Deca Systems, Inc.*, 16-356 (La.App. 1 Cir. 8/8/17), 226 So.3d 466; 2) Blatantly untruthful, inaccurate, and defamatory allegations, *Salassi*, 13 So.3d 670; and 3) Accusations of criminal wrongdoing under the federal Racketeer Influenced and Corrupt Organizations Act (RICO), embodied in 18 U.S.C. 1961 *et seq.*, *Spruiell*, 568 So.2d 133.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Mr. Trahan argues that the trial court erred in revoking the November 10, 2014 donation based on ingratitude. Because Kaycee would have borne the burden of proof on this issue at a trial, the question before us is whether she proved that there were no genuine issues of material fact concerning Mr. Trahan's actions and that his actions amounted to ingratitude such that she was entitled to judgment, as a matter of law, revoking the November 10, 2014 donation.

In her motion, Kaycee alleged that Mr. Trahan's use of Geaux Cajun's business funds for his personal use, his actions in falsely alleging that she and her family violated Louisiana's Racketeering Act, and his refusal to return the donated property to her at her request, were acts of ingratitude that justified her revocation of the November 10, 2014 donation to him. In support of her motion, she introduced Mr. Trahan's third and fourth amended petitions, excerpts from his deposition, the November 10, 2014 inter vivos donation, the June 7, 2016 inter vivos donation, her reconventional demand, and her affidavit.

10

Mr. Trahan admitted to the following facts in his deposition. He was the only person to use Geaux Cajun's Lakeside account, and he frequently intermingled Geaux Cajun's funds with his personal funds. Although he denied treating it as his personal bank account, he used the account to pay his two personal credit cards, his doctor, his residential water bill, and for oriental massages. Despite claiming that the payments to his credit cards were reimbursement for business expenditures made on his personal credit cards, Mr. Trahan admitted he saved no receipts to prove his claim of reimbursement. Nor could he explain charges on the Lakeside account to Bath and Body Works, Victoria's Secret, and Dick's Sporting Goods, claiming that they may have been made by Kaycee, despite his prior statement that she did not use the account.

Mr. Trahan became a co-owner of a 2015 BMW X5 SUV, financed by Geaux Cajun through the trade-in of a business vehicle. He kept a $20,000.00 check, which rightfully belonged to Geaux Cajun, as the owner of the vehicle traded in, and deposited it into his personal account. He failed to report this money as income to the IRS. Although he claimed that he gave half of this money to Kaycee, he presented no proof of this. He also traded in, without Kaycee's knowledge, the Geaux Cajun owned BMW on a $55,000.00 GMC truck, which he placed in his own name.

Finally, Mr. Trahan used $3,000.00 from Geaux Cajun's account to sod the ground around the house Kaycee donated to him, and he used $10,000.00 of the money Geaux Cajun should have received from the vehicle trade-in to install a swimming pool at this same house.

In his petitions, Mr. Trahan accused Kaycee, her parents, and her sister, along with Mr. Dowden, Ms. Basco, and Ms. Stanley,[2] of violating the Louisiana Racketeering Act, La.R.S. 13:1351 et seq. He alleged that they engaged in racketeering activity through the execution and recordation of the May 19, 2016 mortgage by Kaycee to Mr. Martin, the June 7, 2016 donation from him to Kaycee, the August 25, 2016 dation en paiement by Kaycee to Mr. Martin, and the September 2, 2016 sale by Mr. and Mrs. Martin to Mr. and Mrs. Evans. He claimed that these actions by Kaycee, Mr. and Mrs. Martin, and Mrs. Evans were violations of La.R.S. 14:132, injuring public records, and La.R.S. 14:133, failing or maintaining false public records.

In her February 1, 2017 affidavit, Kaycee stated that both she and Mr. Trahan were present before Mr. Dowden when the June 7, 2016 donation in which Mr. Trahan donated the subject property to her was executed. She further stated that both she and Mr. Trahan signed the donation in Mr. Dowden's presence.

There were no supporting documents introduced by Kaycee on her claim that Mr. Trahan refused to return the donated property to her at her request. Thus, we will not consider this claim.

Based on this evidence, we find that Kaycee established a prima facie case showing that there are no genuine issues of material fact and that Mr. Trahan's actions towards her were sufficient to support revocation of the November 10, 2014 donation for ingratitude.

Pursuant to La.Code Civ.P. art. 967(B), the burden shifts to Mr. Trahan. However, he is not allowed to rest on any allegations made in his pleadings, but must respond "by affidavits or as otherwise provided above, [to] set forth specific facts

---

[2] The trial court granted summary judgment in favor of Mr. Dowden, Ms. Basco, and Ms. Stanley prior to the hearing at issue, dismissing Mr. Trahan's racketeering allegations against them.

12

showing that there is a genuine issue for trial." La.Code Civ.P. art. 967(B). The failure to do so will result in judgment, if appropriate, in favor of Kaycee. *Id.*

Here, Mr. Trahan, as defendant-in-reconvention, never answered Kaycee's reconventional demand. Although La.Code Civ.P. art. 960 provides that a plaintiff may not move for summary judgment until after the defendant's answer is filed, any objection on this ground was waived when Mr. Trahan opposed Kaycee's motion without first filing a dilatory exception of prematurity. *Tangi Ready Mix Concrete Co. v. Edwards*, 336 So.2d 232 (La.App. 1 Cir. 1976).

Furthermore, even though he opposed Kaycee's motion for summary judgment, Mr. Trahan failed to support his opposition with documentary evidence. References to previously introduced evidence and excerpts of text messages, when contained in a memorandum, amount to merely arguments and allegations and are not evidence. *Harris,* __ So.3d __. "Merely posing unsupported allegations, inferences, and speculations is not sufficient to create a genuine issue of material fact where the summary judgment standard mandates that one defending his claims from dismissal set forth factual support sufficient to raise a genuine issue in dispute." *Norman v. Michael A. Shelton Enter., Inc.*, 18-1000, 18-1007, p. 14 (La.App. 3 Cir. 5/29/19), __ So.3d __, __, *writ denied*, 19-1093 (La. 10/8/19), 280 So.3d 590. Thus, we find that Mr. Trahan has not presented any facts showing that there is a genuine issue for trial.

Accordingly, based on our finding that Kaycee established a prima facie case of ingratitude on the part of Mr. Trahan sufficient to revoke the November 10, 2014 donation, and his failure to set forth evidence of a material factual dispute, we affirm the trial court's grant of summary judgment in her favor.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Mr. Trahan argues that the trial court erred in finding that all other issues raised by him against the remaining defendants in the principal demand were rendered moot as a result of the first donations' revocation. The February 8, 2018 judgment decreed that "all issues and claims pertaining to the alleged forgery of the June 7, 2016 Donation Inter Vivos filed and recorded on June 24, 2016, in Conveyance Book 4122, Page 845 under Registry No. 3233795, records of Calcasieu Parish, Louisiana, are hereby deemed moot." We find no error in this decision.

In *Cat's Meow, Inc. v. City of New Orleans Through Department of Finance*, 98-601, pp. 8-9 (La. 10/20/98), 720 So.2d 1186, 1193 (third alteration in original), the supreme court discussed the issue of mootness of a controversy, its application and limitations, as follows:

> The jurisprudence of this Court is well settled that courts will not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies. In order to avoid deciding abstract, hypothetical or moot questions, courts require cases submitted for adjudication to be justiciable, ripe for decision, and not brought prematurely. *St. Charles Parish Sch. Bd. v. GAF Corp.*, 512 So.2d [] 1165 [(La.1987)].

> In *Abbott v. Parker*, 259 La. 279, 249 So.2d 908 (La.1971), this Court defined "justiciable controversy" in relation to declaratory relief, as follows:

> > A "justiciable controversy" connotes, in the present sense, an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of a conclusive character. Further, the party seeking the declaratory judgment should have a legally protectable [sic] and tangible interest at stake, and the dispute presented should be of sufficient immediacy and reality to warrant the issuance of the declaratory judgment.

14

This traditional notion of a "justiciable controversy" is rooted in our Constitution's tripartite distribution of powers into the executive, legislative, and judicial branches of government. LA.CONST. art. II, § 1.

According to Louisiana jurisprudence, an issue is "moot" when a judgment or decree on that issue has been "deprived of practical significance" or "made abstract or purely academic." *Perschall v. State*, 96-0322 (La.7/1/97), 697 So.2d 240; *Louisiana Associated Gen. Contractors, Inc. [v. State Through Division of Admin.]*, 669 So.2d [1185,] 1193 [(La.1996)]; *American Waste & Pollution Control Co. [v. St. Martin Parish Policy Jury]*, 627 So.2d [158,] 162 [La.1993)]. A case is "moot" when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. *Robin [v. Concerned Citizens for Better Educ. in St. Bernard, Inc.]*, 384 So.2d [] 405 [(La.1980)]. If the case is moot, then " 'there is no subject matter on which the judgment of the court can operate.' " *St. Charles Parish Sch. Bd.*, 512 So.2d at 1171 (citing *Ex parte Baez*, 177 U.S. 378, 20 S.Ct. 673, 44 L.Ed. 813 (1900)). That is, jurisdiction, once established, may abate if the case becomes moot.

According to ROTUNDA & NOWAK, TREATISE ON CONSTITUTIONAL LAW, Vol. 1, § 2.13, a case may become moot for several reasons:

> The controversy must normally exist at every stage of the proceeding, including the appellate stages. Thus, a case may become moot because the law has changed; because defendant has paid moneys owed and no longer wishes to appeal, notwithstanding plaintiff's desire to obtain a higher court ruling; because allegedly wrongful behavior has passed, been mooted, and could not reasonably be expected to recur; because a party could no longer be affected by a challenged statute; for example, a law regulating rights of minors when the party, through lapse of time, is no longer within the age brackets governed by the statute; or because a party has died.

Thus, it is not enough that the requirements of justiciability are satisfied when the suit is initially filed: the requirements must remain throughout the course of litigation up to the moment of final disposition.

In the instant case, resolution of the revocation issue relative to the first donation necessarily resolves the validity of the second donation and whether it was actually signed by Mr. Trahan. Thus, the issue of the second donation's validity no longer has any practical significance, and no relief or effect would result from a

decision finding that it was rendered invalid because of a forged signature. The net effect would still be negated by the revocation of the original donation. Thus, we affirm the trial court judgment declaring that the issues pertaining to the second donation were rendered moot.

## DISPOSITION

For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of the plaintiff-in-reconvention, Kaycee Rebecca Martin, revoking the November 10, 2014 donation to the defendant-in-reconvention, David Scott Trahan, for ingratitude is affirmed. Further, the judgment of the trial court finding that all issues and claims pertaining to the alleged forgery of the June 7, 2016 donation are deemed moot is affirmed. All costs of this appeal are assessed to David Scott Trahan.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.

16